No. 13,644.

HOLT *v.* MITCHELL ET AL.
(43 P. [2d] 388)

Decided March 25, 1935.

Mr. ALFRED A. ARRAJ, Mr. D. G. REYNOLDS, Messrs. GORDON & ALLOTT, for plaintiffs in error.

Mr. CHARLES L. DOUGHTY, Mr. JOHN L. EAST, of counsel, for defendant in error Rhodes.

*In Department.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THE parties appear in this court in the same order as in the lower court and will be designated herein as plaintiff and defendants.

A general demurrer to plaintiff's supplemental complaint as amended, filed by the defendants Nettie A. Rhodes and Earl M. Deeds, was sustained by the trial court. Plaintiff elected to stand, and the case was dismissed. Plaintiff assigns error.

The facts as set forth in the complaint, and admitted by the demurrer, so far as material, are as follows: On November 20, 1925, defendants, James B. Mitchell and Minnie Mitchell, executed five promissory notes to M. M. Holt aggregating $2,400 and secured the same by a trust

414

deed on land in Baca county, which was duly recorded. Thereafter these notes, for value, and before maturity, were sold and transferred to R. B. Holt, the plaintiff. On April 22, 1929, the Mitchells executed another note to defendant Nettie A. Rhodes and secured that note by a second trust deed on the same lands, which also was duly recorded on December 17, 1929. Said second deed of trust contained the following provision: "Said last above described land being subject to deed of trust for $2,400.00 of record in favor of M. M. Holt." On January 7, 1931, the Mitchells executed a new note to the plaintiff, R. B. Holt in the sum of $1,907.50, which was secured by a deed of trust on the Baca county land. The complaint alleges, "That said deed of trust was given in lieu and in place of the said deed of trust" given to secure the original notes "and as a renewal and extension of such prior obligation," and "as a renewal of the balance thereafter due on the notes," secured by the original trust deed. This last deed of trust was recorded January 27, 1931. On April 12, 1932, subsequent to the recording of all the deeds of trust, defendant Earl M. Deeds filed in the proper office a transcript of judgment to effect a lien on the land above described.

Simultaneously with the recording of the new deed of trust, plaintiff caused the original deed of trust to be released, without actual knowledge that there was an intervening second deed of trust on record. Plaintiff further alleges, "That this mistake was due to the fact that plaintiff, in the transaction involving the release, relied upon the statement of Walter P. Powell, County Clerk and Recorder of Baca County, Colorado, to plaintiff, which statement was to the effect that the Deed of Trust recorded in Book 171 at page 288 (being the new deed of trust, to secure the note to plaintiff for the unpaid balance of the old notes), was the first lien of record since the Deed of trust recorded in Book 137 at page 105 (being the original or first deed of trust) as shown by the indexes in his

office.'' The foregoing facts are sufficiently set out in the complaint and on demurrer we must accept them as true.

Plaintiff asks that his deed of trust to secure payment of the $1,907.50, the balance due on the original notes, be adjudged a prior lien to the deed of trust given to defendant Rhodes, and, being in default, that it now be foreclosed. There is no claim that it appears by the complaint that any of the defendants were damaged or that they changed their positions in any respect by reason of the execution of the new note and trust deed.

The defendants vigorously insist that it appears from plaintiff's complaint that he did not exercise the care required by law to ascertain whether there were other liens against the land before releasing the old deed of trust and recording the new one which was given to secure the unpaid balance, and for that reason plaintiff should not prevail in this action.

■■ It is a well recognized proposition of law that one who relies on the negligence of another as a ground for recovery or to prevent recovery by another, before he can prevail must show that by reason of such negligence he has been damaged or has done something he would not have done or failed to do something he otherwise would have done to his prejudice in reliance thereon. In the absence of such showing equity will not permit one to escape the consequences of an act unless it appears that he exercised reasonable care for his own protection and to protect others who in turn might suffer damage in relying on such act. What is reasonable care depends on the circumstances of each particular case.

It is necessary in this case to consider when the question of such negligence becomes material, and on whom falls the burden of proving negligence or the exercise of due care.

If the defendants, Rhodes and Deeds, did something they would not have done, or failed to do something they otherwise would have done, in reliance on the release of the trust deed, and thereby suffered damage, then the

burden would rest on the plaintiff to show that he used due care under the circumstances, or was himself free from negligence in executing the release, before he could show an equity in himself superior to that in favor of the defendants. In the absence of a showing by defendants of a prejudicial change of position and damage to them, the matter of plaintiff's negligence is not material. In such case the question is merely whether the act was induced by mistake. Plaintiff alleges it was so induced and asks relief on this ground.

The fact involved, is the existence of the Rhodes trust deed at the time of the release of the first trust deed. The mistake is the assumption of the nonexistence of the instrument when in fact it did exist. The mistake does not depend on the degree of care used to ascertain the existence of the second mortgage, but on the state of mind of the plaintiff with respect to its existence. If he had a bona fide belief that it did not exist, so far as he was concerned such a belief was a mistake of fact. If he acted in reliance on such belief and changed his status with reference to the land covered by the trust deed to his own injury, then as between himself and the owner of the land and third persons who were not injured he is entitled to have his status with reference to the land restored by equity. Those who are not injured, as was well stated by the court in *McKenzie v. McKenzie,* 52 Vt. 271, should not be permitted to ''speculate in another's blunders.''

If other parties, in reliance on the act of the plaintiff in releasing the senior lien, had changed their status with respect to the land or failed to act for a period of time within which, but for such release, they would have acted and were thereby damaged, then another situation would confront us and the question of whether the plaintiff exercised due care in making such release or acted negligently in so doing would become material. When junior lien holders or others who acquire an interest in land show that their action or even inaction, induced by reliance on the release, has prejudiced them in any way, an addi-

tional burden is cast on the plaintiff, namely, of showing that he exercised due care for his own protection and for the protection of those who might act, or fail to act, to their damage in reliance on the release.

The mistake and the bona fides of it are the matters material in the first instance in determining whether relief shall be granted as between the parties. Where third parties resist the correction of a mistake, the burden is theirs of showing damage resulting to them in reliance on the act done by mistake. When damage is established, the one who claims his act to have been done by mistake, then has the burden of proving that he exercised care commensurate with the surrounding circumstances to prevent injury to himself and to others who might rely on his act.

Counsel for defendants in their brief contend that under the decisions of this court, in the cases of *Capitol National Bank v. Holmes,* 43 Colo. 154, 95 Pac. 314, and *Lawson v. Whitley,* 69 Colo. 346, 194 Pac. 355, in order to exercise the care required by law before releasing a senior lien, it is necessary to secure an abstract of title and have an examination of such abstract by an attorney-at-law regularly practicing his profession in this state, and that a failure to do this constitutes a failure to pursue the usual and customary method by which the condition of the title to lands is ascertained, and prima facie shows negligence that bars the plaintiff's recovery in this case. In each of the foregoing cases the plaintiff relied upon an abstract which, through the error of the abstractor, failed to show the lien of a judgment, transcript of which had been duly filed. The court in those cases held that under such showing the plaintiff was not guilty of negligence and was entitled to relief. A careful reading discloses that, while the court said that under the facts of those cases the plaintiffs were clearly entitled to relief, it did not go so far as to hold that what the plaintiffs there did is required in every case before relief can be granted.

General statements of the rules of law applicable herein

are to be found in 41 C. J. pp. 582, 587 and 588, and in 19 R. C. L. pp. 467, 472 and 473. Many cases are cited in 33 A. L. R., pages 149 et seq., which deal with situations similar to the one here involved. We quote from two of them. In the case of *Seeley v. Bacon* (N. J. Eq.), 34 Atl. 139, a case that involved an inadequate investigation of the records and the acceptance of statements by the clerk and recorder, as in this case, that there were no intervening liens, the court said: "If these complainants had canceled these mortgages with full knowledge of all the facts, they would admittedly have no standing as suitors asking for such a decree. If, however, they did it through a misunderstanding of a fact, then the question is presented, was it such a mistake as, under the circumstances, a court of equity should rectify? Now, that the cancellation occurred by reason of a mistake of facts is undisputed. It is entirely clear that the supposition that no subsequent incumbrances existed upon the mortgaged property was the inducing cause to such action. Now, as a rule, equity will refuse to rectify a mistake which occurred through the unexcusable negligence of the party who asks to be relieved from the effect of the mistake * * * But what degree of vigilance is to be exercised must depend upon the facts of each case. Where the act done by mistake is one calculated to induce others to take a line of conduct which will put them to loss if the mistake is corrected, it ought to be clear that the party asking for relief has been led into the mistake in spite of the employment of the highest degree of vigilance. Where, however, no one is injured by the mistake but the party himself, and no one has changed his position by reason of the act executed through the influence of the alleged mistake, I see no reason why the mistake should not be corrected, although the highest degree of vigilance has not been exercised. For instance, if the mortgage held by Mr. Bacon had been taken for money advanced by him at the time, and had been taken after the cancellation of the old mortgages, and before the record showed the existence of the new

mortgage, a case would have been presented requiring the strongest evidence of unpreventable mistake to justify the reinstatement of these mortgages. But, as has already been observed, the facts in respect to the mortgage held by Mr. Bacon are entirely different. He advanced nothing at the time his mortgage was accepted, and the old mortgages were still a subsisting lien at that time. So it is perceived that the security of his mortgage, after the restoration of the two old mortgages, is exactly the same as it was before the cancellation. No valuable consideration was advanced by Bacon at the time of the execution of the mortgage to him on the faith of the supposed nonexistence of the two old mortgages, arising from their cancellation of record. By the decree asked for, the parties will be placed in statue quo.''

In *Institute Building and Loan Ass'n v. Edwards* (1913), 81 N. J. Eq. 359, 86 Atl. 962, where the mortgagees caused a search of the records to be made, but which was not sufficient or adequate to disclose the existence of certain judgment liens, the court said, as to the bearing of the failure in this regard on the right to relief: ''Where no one has been injured by the mistake but the party complainant and no one has changed his position by reason of the act which has been performed in consequence of the mistake, relief cannot be properly denied upon the theory that a high degree of vigilance has not been exercised by complainant. The negligence of complainant in failing to procure proper searches should, I think, be thus considered with reference to its effects on the rights of others, and so considered cannot be properly regarded as that type of culpable negligence which appropriately affords a bar to equitable relief.''

The action of the trial court in sustaining defendants' demurrer is reversed, and the cause is remanded with instructions to overrule the demurrer.

Mr. Chief Justice Butler and Mr. Justice Burke concur.