(25 P.3d 877)

No. 85,385

BANKERS TRUST COMPANY, as Trustee of Ameresco Residential Securities Corporation Mortgage Loan Trust 1996-5 under the Pooling and Servicing Agreement dated as of December 1, 1996, *Plaintiff/Appellee/Cross-appellant*, v. UNITED STATES OF AMERICA, *Defendant/Appellant/Cross-appellee*, and MARSHA L. LATHAM; DALE A. LATHAM; ROYSE HOMEOWNERS ASSOCIATION, INC.; MICHAEL A. LEROTA and DAVID HELFREY of HELFREY SIMON & JONES; and PEOPLES NATIONAL BANK & TRUST, *Defendants*.

Opinion filed May 25, 2001.

*Annette M. Wietecha*, of Department of Justice, of Washington, D.C., *Melanie Caro*, assistant United States attorney, and *Jackie N. Williams*, United States Attorney, of Kansas, for the appellant/cross-appellee.

*Joseph P. Dubinski*, of Bryan Cave LLP, of Kansas City, Missouri, for the appellee.

Before LEWIS, P.J., ELLIOTT, J., and DAVID W. KENNEDY, District Judge, assigned.

LEWIS, J.: The United States of America held a tax lien against Dale Latham, who owned an interest in certain real estate. That lien was later reduced to judgment. The Bankers Trust Company (Bankers Trust) took a mortgage lien on the real estate after the tax lien was reduced to judgment. The trial court held that Bankers Trust had the prior lien. The United States appeals, and Bankers Trust cross-appeals.

In May 1983, James and Rose Marie Lechtenberg executed a mortgage covering real estate in Johnson County. In December 1986, Dale and Marsha Latham entered into a contract for a deed with the Lechtenbergs to purchase the real estate. In 1992, the Lathams assigned their interest in the contract for deed to the Peoples National Bank and Trust. This assignment secured a loan for $50,000, recorded on September 17, 1992.

On December 1, 1992, the Internal Revenue Service (IRS) filed a tax lien against Dale Latham in the amount of $46,161.48, plus interest, for a penalty under § 6672 of the Internal Revenue Code. See 26 U.S.C. § 6672 (1989). The United States obtained a judgment against Latham in this amount in May 1993. In June 1993, an abstract of the judgment against Latham was filed in Johnson County.

On January 23, 1997, Dale Latham filed a waiver of marital interest in which he purported to transfer his interest in the real property to Marsha Latham. Also on that day, the Lechtenbergs recorded a warranty deed which transferred the property to Marsha Latham. At the same time, Marsha Latham executed a promissory note and mortgage, covering the real estate in favor of Quality Mortgage U.S.A., Inc., in the amount of $217,750. The proceeds of this loan were disbursed and applied as follows: (1) $101,715.44 was applied to the balance and fully satisfied the Lechtenberg mortgage; (2) $51,659.16 was applied to the balance and fully satisfied the contract for deed; (3) $16,625 was applied against the

balance and partially satisfied the Latham assignment; (4) $31,784.39 was applied to and fully satisfied an IRS tax lien against Marsha Latham; and (5) $14,066.93 was applied to closing costs. It is not clear from the record how the remaining proceeds of $1,899.08 were disbursed.

Either on or prior to the date of closing, Quality Mortgage obtained a title insurance policy which reflected the judgment lien of the United States.

On the same date on which the actions set forth above took place, Bankers Trust bought the Marsha Latham promissory note and mortgage from Quality Mortgage. We note that at the time the note and mortgage were purchased, the title insurance policy described above had been issued showing the judgment lien of the United States. Marsha Latham eventually defaulted on the mortgage, and Bankers Trust brought this action to foreclose the mortgage. The United States was named as a defendant to the action.

The United States claims a priority lien on the one-half interest in the property that was held by Dale Latham prior to the entry of judgment against him in 1992 which he subsequently transferred to Marsha Latham. The United States asserts that it had priority over the Bankers Trust mortgage lien because its judgment lien was filed in 1993 and the Bankers Trust mortgage was not filed until 1997.

Bankers Trust argued that under the doctrine of equitable subrogation, its 1997 mortgage lien should be given priority over the 1992 United States judgment lien. In asserting this doctrine, Bankers Trust argues that the proceeds from the loan obtained from Quality Mortgage were used to pay off existing encumbrances on the property that were senior to the United States lien. Bankers Trust further asserts that at the time it loaned this money, it was the intention of the parties that the mortgage be a first priority lien upon the property.

The United States disputes that the doctrine of equitable subrogation should be applied in this case. It argues that Bankers Trust should not be equitably subrogated to the position of a senior lienholder because it had constructive and actual notice that the United States had a prior lien on the property.

The trial court held that equitable subrogation should apply and ordered that upon sale of the property, Bankers Trust should be paid $215,850.92, and that one-half of any remaining proceeds should be paid to the United States to the extent of $147,996.38. Any amounts remaining were to be paid to Marsha Latham. The trial court refused to award any priority to accrued interest in favor of Bankers Trust.

The trial court's decision leaves the United States without hope of collecting anything on its judgment against Dale Latham. The first mortgage ruled to be in favor of Bankers Trust exceeds the sale value of the property.

The United States appeals from the trial court's decision on equitable subrogation, and Bankers Trust cross-appeals the trial court's refusal to award priority for accrued interest.

The question which we must determine is whether the trial court erred in this case by applying equitable subrogation to award Bankers Trust a lien prior to that of the United States.

The relief sought by Bankers Trust is equitable in nature, and the application of an equitable doctrine rests within the sound discretion of the trial court. *In re Marriage of Jones*, 22 Kan. App. 2d 753, 759, 921 P.2d 839, *rev. denied* 260 Kan. 993 (1996).

Subrogation is "the substitution of another person in the place of the creditor so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Hartford Fire Ins. Co. v. Western Fire Ins. Co.*, 226 Kan. 197, 206, 597 P.2d 622 (1979). Subrogation will only be applied if it will not materially prejudice the holders of intervening interests. Restatement (Third) of Property—Mortgages § 7.6, comment e (1997).

There are two types of subrogation. One type of subrogation is conventional subrogation, and it arises from an agreement between the parties. The other type of subrogation is legal or equitable subrogation, and it does not depend on the agreement of the parties and is a creature of equity. *St. Paul Fire & Marine Ins. Co. v. Tyler*, 26 Kan. App. 2d 9, 15, 974 P.2d 611 (1999) (citing *Hartford*, 226 Kan. 197, Syl. ¶ 3). As pointed out earlier, this is a case involving equitable subrogation, and no one suggests there was a contract providing for subrogation.

The United States asserts a number of reasons why it believes the doctrine of equitable subrogation should not have been applied in this case. However, the principal assertion by the United States and the one on which we now focus is whether Bankers Trust should be equitably subrogated to be a senior lienholder when it had both constructive and actual knowledge of the United States' existing lien prior to the time it acquired the lien in question.

The United States relies primarily on the decision of *Kuhn v. Bank*, 74 Kan. 456, 87 Pac. 551 (1906). We believe that decision does constitute powerful authority in favor of the position advocated by the United States. In *Kuhn*, the plaintiff purchased real estate which was encumbered by three mortgages and two judgment liens, all of which were of record. The plaintiff agreed to pay off all of those encumbrances, but at the time of the action, there were two mortgages and two judgment liens still outstanding. The defendant asked the Supreme Court to apply equity to give him a lien position superior to that held by those who had liens on the real estate at the time he purchased it. The Kansas Supreme Court refused to do so and stated:

"If, as it has uniformly been decided, a purchaser of either real or personal property is bound to take notice of the facts affecting the title to the property which the records of the county show, and which records the statutes provide shall be public notice, then it is quite immaterial whether or not Kuhn had actual knowledge of the existence of the judgments. In the absence of conduct on the part of the person who afterward asserts the facts shown by the records to the prejudice of the purchaser which prevents an examination of the records or induces the purchaser not to make such examination, *it is negligence for a purchaser of either real or personal property to make the purchase without ascertaining the facts shown by the records which may affect the title to be acquired.* In the absence of such fraudulent conduct the purchaser will be presumed to have bought with knowledge of all the facts which the records at the time would have disclosed. *Equity cannot be invoked to relieve one from the consequences of his own negligence. (Hargis v. Robinson*, 63 Kan. 686, 66 Pac. 988.)" (Emphasis added.) 74 Kan. at 458.

The court refused to apply the doctrine of equitable subrogation and said:

"Or, having paid the first and second, could he not claim subrogation as to both, in a suit to foreclose the third? *Sufficient answer it is to say that the equitable*

*relief of subrogation was not designed to aid speculation nor to relieve litigants from the consequences of their own negligence, ignorance or mistakes of judgment. (Hargis v. Robinson, supra.)* This equitable relief originated in the evident justice of substituting a surety who has been compelled to pay the debt of his principle to the place of the creditor as against other creditors affected by the transaction. It has on principal been extended to the relief of junior lien-holders who, to protect their own interests, have been compelled to pay off prior liens, and to other cases where natural justice required its application and where no violence was done to the legal rights of others." (Emphasis added.) 74 Kan. at 459.

At another point in the opinion, the court stated:

"The decisions of this court have been liberal in allowing subrogation where any equity required it and no legal right of others was encroached upon, but in no case does it appear the court has gone to the extent demanded in this case. Whether Kuhn would have purchased the land had the judgment liens been brought to his attention, assuming he had no knowledge of them, is a question of pure speculation, as they were for small amounts. Being charged with the knowledge of these liens, and having no interest to protect, he must be held to have simply stepped into his grantor's shoes. When he paid off a mortgage that was prior to the judgment lien it had the same effect as if the payment had been made by the grantor before he parted with his title." 74 Kan. at 460-61.

We believe that *Kuhn* is applicable to the argument made by the United States in the instant matter. Bankers Trust argues that it does not apply and stands only for the proposition that one cannot hold a mortgage on one's own fee estate. Bankers Trust also distinguishes *Kuhn* on the theory that Kuhn was a purchaser, whereas Bankers Trust is a lender. We see neither argument as being persuasive in distinguishing *Kuhn*. In this case, Bankers Trust, like Kuhn, expended money and acquired a lien on real estate which was subject to a prior judgment in favor of a third party. Bankers Trust had notice of that lien as is illustrated by reference to the title insurance purchased in the instant matter. As Kuhn did, Bankers Trust apparently ignored the prior interests of the United States and now, as Kuhn also did, asks equity to establish it as the senior lienholder. The courts have said, as in *Kuhn*, that "courts of equity will not relieve parties from the consequences of their own folly or assist them when their condition is attributable to a failure to exercising ordinary care for their own protection. *Great Western Mfg. Co. v. Adams*, 176 Fed. 325, 327 (8th Cir. 1910). It is also said that

"[e]quity aids the vigilant and not those who slumber on their rights." *Rex v. Warner*, 183 Kan. 763, 771-72, 332 P.2d 572 (1958). It appears to us that in this case Bankers Trust failed to exercise ordinary care for its own protection and failed to be vigilant when it took the lien with knowledge of a prior judgment lien in favor of the United States. We see no compelling reason to exercise equity on behalf of the party who has acted in this manner.

Our review of the cases in other states indicates that many jurisdictions focus on whether a party had actual notice of an intervening interest before it will apply the doctrine of equitable subrogation. We would concede, however, that this is not necessarily the majority rule, but we believe it to be the rule in Kansas. Restatement (Third) of Property—Mortgages § 7.6, comment e (1997). Under the Restatement, knowledge is not necessarily relevant. The question under the Restatement appears to be whether "the payor reasonably expected to get security with a priority equal to the mortgage being paid." Bankers Trust argues that at the time of the financing, it was the parties' intention that the loan be the first priority lien upon the property. We fail to see how the intention of Bankers Trust has anything to do with whether its lien is a priority lien upon the property. The holder of the first lien of record was neither consulted or notified of the transaction involving Bankers Trust. We fail to understand how Bankers Trust expects to establish a prior lien on the property simply by stating that it intended to do so.

It is also important that in this case, Bankers Trust was a sophisticated institutional lender. We conclude it should be held to a high standard of knowledge and action. It is difficult to understand why any bank would take a lien on property knowing that it was encumbered by a prior judgment lien which had been of record for approximately 5 years. There are any number of things Bankers Trust could have done to protect itself. It could have approached the United States and attempted to work out a subordination agreement. It could have taken an assignment of the other mortgages and stepped into the shoes of the holders of those mortgages. Instead, it did nothing and paid out substantial sums of money on a property encumbered by a prior judgment lien.

We hold the doctrine of equitable subrogation may not be applied to relieve a party who negligently takes a lien on or an interest in property which is subject to prior liens of record of which that party had either actual or constructive notice. To apply equitable subrogation under those circumstances would be tantamount to relieving that party of a condition attributable to a failure to exercise ordinary care for his, her, or its own interests. Equitable subrogation will not apply in favor of such a party.

We note that in reaching our decision, we have not considered the fact that Bankers Trust may have had insurance to protect it against this type of loss and that the title insurance company is actually the real party in interest. We realize that other jurisdictions have been hesitant to apply equitable subrogation where a title insurance company was negligent in failing to discover an intervening tax lien. See *First Federal Sav. Bank of Wabash v. U.S.*, 118 F.3d 532, 534 (7th Cir. 1997). We do not believe that the presence or absence of insurance has any relevance to our decision as to whether equitable subrogation should apply.

We reverse the trial court's decision in favor of Bankers Trust and remand with directions to enter judgment in favor of the United States as the first lienholder, superior to the lien of Bankers Trust. The proceeds from the sale of the property should be distributed in a manner consistent with this opinion.

The other issue in this case involves the cross-appeal of Bankers Trust seeking a priority lien with respect to accrued interest. In view of our decision on the question of equitable subrogation, this issue is rendered moot, and we do not reach it.

Reversed and remanded with directions.