Donald P. HICKS, Plaintiff–Appellee,

v.

Kent T. LONDRE, Jennifer A. Londre, and Chase Manhattan Mortgage Corporation, Defendants–Appellants.

No. 03CA1396.

Colorado Court of Appeals, Div. III.

Aug. 12, 2004.

Rehearing Denied Oct. 21, 2004.

Certiorari Granted Feb. 28, 2005.

James R. Florey, Jr., Centennial, Colorado, for Plaintiff–Appellee.

Hamil–Hecht, LLC, J. Lawrence Hamil, Christina V. Miller, Denver, Colorado, for Defendants–Appellants.

Opinion by Judge TAUBMAN.

Defendants, Kent T. Londre, Jennifer A. Londre, and Chase Manhattan Mortgage Corporation (Chase), appeal the trial court's order and judgment of foreclosure entered in favor of plaintiff, Donald P. Hicks. We reverse and remand.

In September 2001, Hicks obtained a judgment lien against Robert Grubbs in excess of $400,000 for damages incurred by Hicks when he paid subcontractors and suppliers who should have been paid by entities owned by Grubbs, the general contractor for a building project. Hicks filed the judgment lien with the Arapahoe County Clerk and Recorder's Office in October 2001, encumbering real property owned by Grubbs in Englewood, Colorado (the property).

In January 2002, Grubbs sold the property to the Londres for $1,510,000. The property was encumbered by a first deed of trust held by Washington Mutual and two deeds of trust held by Compass Bank. From the proceeds of the sale, the title company disbursed $1,427,191.12 to Washington Mutual, which released its first deed of trust on the property, and Compass Bank released its deeds of trust without payment. Grubbs collected no proceeds from the sale.

The title company did not discover Hicks's judgment lien prior to the sale, and the purchase contract made no reference to it. Accordingly, unaware of Hicks's judgment lien, Chase financed the sale with a $1 million purchase money loan, and the Londres, also unaware of Hicks's judgment lien, paid the remainder of the purchase price with their own funds. Chase recorded its deed of trust with the Arapahoe County Clerk and Recorder's Office on January 16, 2002.

Before the sale, Hicks had seen a copy of the purchase contract between Grubbs and the Londres, and a copy of the contract was faxed to Hicks's attorney in November 2001. There was no evidence that Hicks had attempted to foreclose on the property or oth-

erwise collect on the debt Grubbs owed to him prior to the sale.

However, two weeks after the sale of the property, Hicks sent a letter to the Londres indicating his intent to collect on his judgment lien. In June 2002, Hicks brought this foreclosure action, asserting priority over the Londres' warranty deed and the Chase deed of trust.

After a two-day trial in June 2003, the trial court entered an order concluding that, because the Londres and Chase were "presumed to have actual notice of [Hicks's] judgment," the judgment lien had priority over the other encumbrances on the property. Subsequently, pursuant to that order, the court entered a judgment of foreclosure in favor of Hicks. This appeal followed.

■ The Londres and Chase argue that the trial court erred by concluding that, because they were purchasers of the property and not the original mortgagees and because Hicks's judgment lien was properly recorded, the doctrine of equitable subrogation did not apply. We agree.

When the controlling facts are undisputed, the legal effect of those facts constitutes a question of law. Therefore, we are not bound by the conclusions of the trial court and review independently whether the doctrine of equitable subrogation applies to the facts of this case. *See Lakeview Assocs., Ltd. v. Maes*, 907 P.2d 580, 583–84 (Colo. 1995).

■ Subrogation is defined as the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814 (Colo.2004). Subrogation is employed as an equitable adjustment whereby a secondarily liable party who has paid the debt of the primarily liable party may institute a recovery action in order to be made whole. *Mid–Century Ins. Co. v. Travelers Indem. Co.*, 982 P.2d 310, 315 (Colo.1999).

■ Thus, under equitable subrogation, a person who pays off an encumbrance without knowledge of a superior lien may assume the same priority position as the holder of the previous encumbrance; if there were no subrogation, a junior lienholder would be promoted in priority, giving that lienholder an unwarranted and unjust windfall. *Houston v. Bank of Am. Fed. Sav. Bank*, 78 P.3d 71 (Nev.2003). Where a first deed of trust has been released through mistake of fact, equity, under certain circumstances, will intervene to correct the mistake. *W. Fed. Sav. & Loan Ass'n v. Ben Gay, Inc.*, 164 Colo. 407, 411–12, 436 P.2d 121, 123 (1967). Equitable subrogation is a highly favored doctrine and has been given liberal application. *See Pennsylvania Nat. Mut. Cas. Ins. Co. v. City of Pine Bluff*, 354 F.3d 945 (8th Cir.2004); *Essex Ins. Co. v. Tyler*, 309 F.Supp.2d 1270 (D.Colo.2004)(interpreting Illinois law); *Davis v. Johnson*, 241 Ga. 436, 246 S.E.2d 297 (1978); *Osterman v. Baber*, 714 N.E.2d 735,738 (Ind.Ct.App. 1999).

## I. Equitable Subrogation with Purchasers and New Mortgagee

At trial, the Londres and Chase cited four cases in which Colorado courts applied the doctrine of equitable subrogation: *Capitol National Bank v. Holmes*, 43 Colo. 154, 95 P. 314 (1908); *Lawson v. Whitley*, 69 Colo. 346, 194 P. 355 (1920); *Holt v. Mitchell*, 96 Colo. 412, 43 P.2d 388 (1935); and *Western Federal Savings Loan v. Ben Gay, Inc., supra*. The trial court distinguished *Lawson, Holt,* and *Western Federal* on the basis that in those cases the party seeking to apply equitable subrogation was a refinancing mortgagee who released the prior mortgage with the understanding that the recording of the new lien would not affect its priority. In contrast, here, the Londres are purchasers of the property, and Chase is a new mortgagee; thus, the trial court held, the doctrine did not apply.

The Londres and Chase argue that the trial court erred because *Capitol National Bank* supports the conclusion that equitable subrogation may be applied to a purchaser and new mortgagee. We agree.

In *Capitol National Bank*, Wright, the owner of real property, gave a mortgage on the property at issue to McFetrich. Later, a bank filed a judgment lien against Wright, encumbering the property. Wright then sold the property to Holmes, who paid off the

McFetrich mortgage without actual knowledge of the intervening judgment lien. The bank sought foreclosure and priority of its judgment lien. However, the supreme court, applying the doctrine of equitable subrogation, subrogated Holmes's deed to the rights of McFetrich, giving him priority over the bank's judgment lien.

The decision in *Capitol National Bank* is consistent with a leading treatise in this area. *Pomeroy's Equity Jurisprudence* states:

> It is frequently held, there being no intervening equities, that one who advances money to discharge a prior lien on real ... property, and who takes a *new mortgage* as security, is entitled to subrogation to the prior lien as against the holder of an intervening lien of which the lender was ignorant. However, on various grounds such as negligence in examining the records, the voluntary nature of the loan, and the like, subrogation has been denied....
>
> In many jurisdictions it is held that a *purchaser* who discharges, pursuant to his [or her] agreement to do so, a specific superior lien on the land as part or full payment of the purchase price, without actual notice of a recorded junior lien, is entitled to subrogation, in the absence of intervening equities, to the rights of the holder of the lien so discharged, as against the junior lien.

4 John Norton Pomeroy, *Pomeroy's Equity Jurisprudence* § 1212, at 642–43 (5th ed.1941)(emphasis added); *see also E. Boston Sav. Bank v. Ogan*, 428 Mass. 327, 701 N.E.2d 331 (1998).

Thus, the facts that the Londres were purchasers and not mortgagees of the property and that Chase was not the original mortgagee did not, as a matter of law, bar them from relying on the doctrine of equitable subrogation. Therefore, to the extent the trial court concluded that the Londres and Chase could not assert equitable subrogation because of their positions as purchasers and new mortgagee, respectively, the trial court erred.

## II. Actual vs. Constructive Notice

The Londres and Chase also assert that the trial court erred in finding that, because the judgment lien was recorded, they had actual notice of it and, thus, the doctrine of

equitable subrogation did not apply. Again, we agree.

Section 38–35–109, C.R.S.2003, provides for all deeds or judgments encumbering or affecting the title to real property to be recorded in the office of the county clerk and recorder of the county where the real property is situated.

Recording provides constructive notice of an interest affecting title. *See Leyden v. Citicorp Indus. Bank*, 782 P.2d 6 (Colo.1989); *Collins v. Scott*, 943 P.2d 20 (Colo.App.1996); *see also Franklin Bank, N.A. v. Bowling*, 74 P.3d 308 (Colo.2003)(discussing difference between constructive notice and actual notice in real estate transactions).

Jurisdictions have followed three approaches in determining whether to apply equitable subrogation when a party held a recorded lien on the property at the time the former encumbrance was paid off. *See Houston v. Bank of Am. Fed. Sav. Bank, supra.*

The first approach, which a majority of states follow, is that actual notice of an existing lien precludes the application of equitable subrogation, but constructive notice does not. *See United States v. Baran*, 996 F.2d 25, 29 (2d Cir.1993); *Dietrich Indus., Inc. v. United States*, 988 F.2d 568, 572 (5th Cir.1993); *Brooks v. Resolution Trust Corp.*, 599 So.2d 1163, 1165 (Ala.1992); *Smith v. State Sav. & Loan Ass'n*, 175 Cal.App.3d 1092, 1098, 223 Cal.Rptr. 298, 301 (1985); *United Carolina Bank v. Beesley*, 663 A.2d 574, 576 (Me.1995); *Enter. Bank v. Fed. Land Bank*, 139 S.C. 397, 138 S.E. 146 (1927). The reasoning underlying this approach is that a mortgagee without actual notice of a junior lienholder is reasonably expected to step into the shoes of the previous creditor it had paid off. George E. Osborne, *Mortgages* § 282, at 573 (2d ed.1970).

The second approach bars the application of equitable subrogation when a lienholder possesses either actual or constructive notice of an existing lien. *See Harms v. Burt*, 30 Kan.App.2d 263, 266–68, 40 P.3d 329, 332 (2002).

The third approach, the view adopted by Restatement (Third) of Property: Mortgages § 7.6 (1997), applies equitable subrogation

regardless of actual or constructive notice, as long as the junior lienholder is not prejudiced by its application. *See Houston v. Bank of Am. Fed. Sav. Bank, supra.*

We conclude that the majority approach is consistent with Colorado law to the extent it provides that constructive notice does not preclude application of equitable subrogation.

Here, contrary to the trial court's ruling, the Londres and Chase did not have actual notice of Hicks's judgment lien. Because there was no actual notice in this case, we need not decide whether actual notice of an existing lien precludes application of equitable subrogation. However, as more fully explained below, we hold that constructive notice does not.

In *Capitol National Bank, supra,* the bank argued that because its judgment lien was recorded, Holmes, the purchaser, was not entitled to equitable subrogation. However, the court concluded that "without actual notice of the junior judgment lien, it will be presumed that [the purchaser] paid the same for his own benefit and the protection of his own interests, and equity will treat him as the assignee of the original [encumbrance]." *Capitol National Bank, supra,* 43 Colo. at 159–60, 95 P. at 316. Therefore, the court concluded, Holmes was entitled to priority over the bank's judgment lien.

Similarly, here, the proceeds of the sale were used to pay off the first deed of trust, enabling the Londres and Chase to step into the shoes of the mortgagee. There is no evidence that they had actual notice of the judgment lien. Rather, the record shows that they relied on the title company's search, which did not reveal Hicks's judgment lien.

In that regard, Colorado courts have held that one who relies on a title examination which fails to show the existence of a lien is not negligent. *See Holt v. Mitchell, supra.* Further, the presence or absence of title insurance is not relevant to the determination of whether the doctrine of equitable subrogation should apply in a particular case. *See Bankers Trust Co. v. United States,* 29 Kan.App.2d 215, 25 P.3d 877, 882 (2001).

Thus, to the extent the trial court concluded that the Londres and Chase were "pre-sumed to have actual notice" of the judgment lien merely because it was filed, and therefore were barred from asserting equitable subrogation, the trial court erred.

We disagree with Hicks's contention that the Londres and Chase have an adequate remedy at law because the Londres can file a claim against their title insurance company and can sue Grubbs and, therefore, equitable subrogation should not apply. To bar an equitable remedy, a legal remedy must lie against the opposing party and not against third parties who are not before the court. *Dudley v. Keller,* 33 Colo.App. 320, 521 P.2d 175 (1974).

Moreover, Hicks would not be inequitably harmed by the subrogation of Chase's deed of trust; at worst, Hicks's interest would be no more junior after subrogation than it was before the sale of the property.

## III. Elements of Equitable Subrogation

■ Before the doctrine of equitable subrogation may apply, a court must determine: (1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder. *E. Boston Sav. Bank v. Ogan, supra,* 701 N.E.2d at 334.

Here, the facts establishing these elements are undisputed. Therefore, the interests of the Londres and Chase should be equitably subrogated to the priority position of the original Washington Mutual deed of trust, and thereby have priority over Hicks's lien. *See Lakeview Assocs., Ltd. v. Maes, supra* (when controlling facts are undisputed, the legal effect of those facts constitutes a question of law). Hick's lien remains an encumbrance on the property, and he may still seek to foreclose his junior lien.

Accordingly, the order and judgment are reversed, and the case is remanded for entry

of judgment in favor of the Londres and Chase.

Judge DAILEY and Judge METZGER * concur.