**Donald P. HICKS, Petitioner,**

v.

**Kent T. LONDRE; Jennifer A. Londre; and Chase Manhattan Mortgage Corporation, Respondents.**

**No. 04SC741.**

Supreme Court of Colorado, En Banc.

Dec. 19, 2005.

Rehearing Denied Jan. 9, 2006.

James R. Florey, Jr., Castle Rock, for Petitioner.

Hamil–Hecht, LLC, J. Lawrence Hamil, Christina V. Miller, Denver, for Respondents.

Tobey & Toro, P.C., Gary H. Tobey, Jean M. Toro, Centennial, for Amicus Curiae Timbers Homeowners Association.

Karsh, Fulton, Gabler & Joseph, P.C., Seymour Joseph, Ivan M. Call, Denver, for Amicus Curiae Land Title Association of Colorado.

Durfee West P.C., Amy Durfee West, Denver, for Amicus Curiae Real Estate Law Section of the Colorado Bar Association.

KOURLIS, Justice.

We granted certiorari to review the court of appeals' judgment in *Hicks v. Londre*, 107 P.3d 1009 (Colo.App.2005). This case questions the vitality and applicability of the doctrine of equitable subrogation in Colorado. Equitable subrogation is a legal theory that allows the holder of an encumbrance on real property, like a mortgagee or lienholder, to assume the priority position of a previous mortgagee or lienholder rather than falling into line behind all recorded liens or encumbrances. Here, a purchaser bought a home by contributing a considerable amount of cash at closing and financed the balance through a loan that resulted in a deed of trust on the property. The purchaser and mortgagee (lender) then discovered that there was a judgment lien filed against the property. The judgment lienholder sought to foreclose on his lien as a first encumbrance, which would have permitted him to satisfy his lien from the proceeds of the foreclosure sale first. The purchaser and mortgagee argued that they were entitled to move into the priority position of the seller's lenders—in front of the lienholder—by operation of the doctrine of equitable subrogation. The court of appeals concluded that the doctrine applied under the circumstances. We agree, and reaffirm that equitable subrogation operates as a narrow exception to the Recording Act. When certain factors are met, and when the holder of an intervening lien is not prejudiced by the subrogation, equity may permit such an exception. We determine that the factors were satisfied in this case, that Hicks did not demonstrate prejudice, and accordingly, we affirm the court of appeals' judgment.

## I. Facts and Proceedings

The material facts are undisputed. In 2001, Donald P. Hicks (Hicks) contracted with Robert Grubbs (Grubbs) to construct an automobile sales facility. During the course of construction, two corporate entities owned by Grubbs failed to pay the project's subcontractors as required by the terms of the construction contract. In order to expedite completion of the project, Hicks paid the subcontractors himself and initiated an action against Grubbs to recoup the money. On September 29, 2001, Hicks obtained a $413,773.73 judgment against Grubbs. On October 5, 2001, Hicks properly recorded the transcript of that judgment in the Arapahoe County Clerk and Recorder's Office. Pursuant to section 13–52–102, C.R.S. (2005), the lien attached to certain real property owned by Grubbs located at Lot 103 Glenmoor Lane in Englewood, Colorado (the property).

Hicks' judgment lien was fourth in line behind three superior deeds of trust that encumbered the property. Washington Mutual Bank, FA (Washington Mutual) held a first deed of trust securing $1,610,000, while Compass Bank (Compass Bank) held a second and third deed of trust. Hicks' judgment lien therefore occupied a fourth level junior position.

On January 14, 2002, Grubbs conveyed the property by warranty deed to Kent T. and Jennifer A. Londre (the Londres) for $1,510,000. The sale was financed by a purchase money loan of $1 million provided by Chase Manhattan Corporation (Chase); the

Londres provided the remaining funds, approximately $510,000. The purchase price was less than the combined deeds of trust, and indeed, Compass Bank received none of the proceeds at closing. Furthermore, the purchase contract made no mention of Hicks' judgment lien, and although the Londres and Chase obtained title insurance, the title insurance company failed to discover Hicks' lien. Moreover, Hicks learned of the sale prior to closing, but did not appear at closing, presumably because he did not know when it was to occur. At closing, $1,427,191.12 was disbursed to Washington Mutual, which released its deed of trust. Although Compass Bank received none of the proceeds, it too released its deeds of trust. The Londres immediately recorded their warranty deed and Chase recorded its deed of trust.

Shortly after the sale closing, Hicks notified the Londres of his intervening lien and his intent to collect on it. On June 11, 2002, Hicks initiated a foreclosure action against the property, asserting priority over the Londres' warranty deed and Chase's deed of trust. The Londres and Chase countered with the affirmative defense of equitable subrogation, arguing they did not have actual knowledge of Hicks' lien and therefore ought to be subrogated to the first deed of trust position previously occupied by Washington Mutual.

Trial took place in June of 2003, after which the district court entered judgment in favor of Hicks. The court rejected the Londres' and Chase's equitable subrogation argument, reasoning that because Hicks had properly recorded his judgment lien prior to execution of the purchase contract, under the Recording Act, the Londres and Chase were presumed to have actual knowledge of Hicks' previously recorded lien. Consequently, the court entered judgment in favor of Hicks.

The court of appeals reversed. The court of appeals first held that the Londres, as new purchasers, and Chase, as a new mortgagee, were not barred from asserting the doctrine of equitable subrogation. *Hicks*, 107 P.3d at 1011–12. Then, because the Londres and

Chase had only constructive knowledge of Hicks' lien, and had not acted negligently in failing to discover it, the court of appeals held, "the Londres and Chase should be equitably subrogated to the priority position of the original Washington Mutual deed of trust, and thereby have priority over Hicks's [sic] judgment lien." *Id.* at 1013.

Hicks subsequently petitioned this court for certiorari and we granted review.

We granted certiorari to consider the propriety of the court of appeals' application of equitable subrogation to the present case, and the interrelationship between the doctrine and Colorado's Recording Act, section 38–35–109, C.R.S. (2005).[1]

## II. Analysis

### A. Standard of Review

■ Where the controlling facts are undisputed, the legal effect of those facts constitutes a question of law subject to de novo review. *People v. McCullough*, 6 P.3d 774, 782 (Colo.2000). This standard does not bind us to the legal conclusions reached by the lower courts, but permits us to independently review the question of whether the doctrine of equitable subrogation applies to the circumstances present in this case. *See Lakeview Assocs., Ltd. v. Maes*, 907 P.2d 580, 583–84 (Colo.1995).

### B. The Recording Act

■ Colorado's Recording Act is intended to make titles to and interests in real property more secure and marketable so that subsequent purchasers and encumbrancers may rely on the record title. *See* § 38–34–101, C.R.S. (2005). To protect subsequent purchasers from secret prior interests, the Recording Act dictates that every interest affecting land be recorded. *See Hallett v. Alexander*, 50 Colo. 37, 41–42, 114 P. 490, 492–93 (1911). The pertinent portion of the statute provides:

> No such unrecorded instrument or document shall be valid against any person with

---

1. We granted certiorari to consider:

   Whether the court of appeals erred in holding equitable subrogation applies in this case.

   Whether the trial court correctly applied the presumption of notice contained in section 38–35–109.

any kind of rights in or to such real property who records first . . . except between the parties thereto and against those having notice thereof prior to acquisition of such rights. This is a race notice recording statute.

§ 38–35–109.

In Colorado, a judgment creditor may record a transcript of his judgment in any county, and such judgment "shall become a lien upon all the real estate . . . owned by such judgment debtor" in that county. § 13–52–102. A properly recorded judgment lien grants rights identical to those of a bona fide purchaser for value. *Sky Harbor, Inc. v. Jenner*, 164 Colo. 470, 475, 435 P.2d 894, 896 (1968); *Wedman v. Carpenter*, 65 Colo. 63, 65, 173 P. 57, 58 (1918). Consequently, if a judgment creditor records the transcript of his judgment prior to and without notice of a later conveyance, the lien of his judgment is superior even to the rights of a new owner. *Fleming v. McFerson*, 94 Colo. 1, 4, 28 P.2d 1013, 1014 (1933).

In the present case, Hicks properly recorded his judgment lien prior to and without notice of Grubbs' later conveyance to the Londres. Therefore, unless the doctrine of equitable subrogation operates to elevate the Londres and Chase to the priority position of Washington Mutual, Hicks' lien enjoys the first priority lien position and he would be entitled to foreclose on the lien with the proceeds of sale going first to satisfy his lien and only then to satisfy the Chase deed of trust. Any balance would go to the Londres.

## C. Equitable Subrogation

Subrogation is defined as "the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt." *Cotter Corp. v. Am. Empire Surplus Lines*, 90 P.3d 814, 833 (2004) (quoting *Behlen Mfg. Co. v. First Nat'l Bank of Englewood*, 28 Colo.App. 300, 309, 472 P.2d 703, 707 (1970)). Subrogation is an equitable principle that allows "a party secondarily liable who has paid the debt of the party who is primarily liable [to] institute a recovery action in order to be made whole." *Id.* (quoting *Mid–Century*

*Ins. Co. v. Travelers Indem. Co.*, 982 P.2d 310, 315 (Colo.1999)). Thus, within the context of mortgages, equitable subrogation permits the substitution of a later lienholder into the lien-priority status of a prior lienholder. *See Lamb Excavation, Inc. v. Chase Manhattan Mortgage Corp.*, 208 Ariz. 478, 95 P.3d 542, 544 (App.2004). The doctrine allows a later-filed lienholder to leap-frog over an intervening lien and take a priority position.

Ordinarily, when one deed of trust is released, junior lienholders just move up the line in priority. *See Western Federal Sav. and Loan Ass'n of Denver v. Ben Gay, Inc.*, 164 Colo. 407, 411, 436 P.2d 121, 123 (1967). However, if the deed of trust has been released due to mistake, it may be restored through equitable subrogation. *Id.* at 411–12, 436 P.2d at 123. A lienholder who successfully invokes the doctrine is called a subrogee. There are five factors that have been outlined as conditions precedent to the application of equitable subrogation: "(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder." *E. Boston Sav. Bank v. Ogan*, 428 Mass. 327, 701 N.E.2d 331, 334 (1998) (quoting *Mort v. United States*, 86 F.3d 890, 894 (9th Cir. 1996)).

As is relevant to the first factor, in *Capitol Nat'l Bank v. Holmes*, we held that when the owner of a fee title pays off a prior encumbrance without actual notice of a junior judgment lien, it will be presumed that he paid the lien for his own benefit and to protect his own interests and equity will treat him as the assignee of the original encumbrance. 43 Colo. 154, 159–60, 95 P. 314, 316 (1908). Although that rule had previously applied only where an owner of property satisfied a senior encumbrance thereon, in *Capitol Nat'l Bank*, we found the rule applicable to cases in which a new purchaser satisfies a senior encumbrance because there is a presumption that such purchasers satisfy senior liens not

for the benefit of any junior lienholder, but for his or her own interests. *Id.* Thus, *Capitol Nat'l Bank* established that a new purchaser of real property that satisfies a senior lien against the property does so for the benefit of his or her own interests.

■ Turning to the second element, we note that jurisdictions have adopted somewhat imprecise definitions of a volunteer. *See* Restatement (Third) of Prop.: Mortgages, § 7.6 cmt. b (1997) ("[T]he meaning of the term 'volunteer' is highly variable and uncertain and has engendered considerable confusion."). Suffice it to say that "[a] person who lends money to pay off an encumbrance on property and secures the loan with a deed of trust on that property is not a volunteer for purposes of equitable subrogation." *Mort,* 86 F.3d at 894; *see also Laffranchini v. Clark,* 39 Nev. 48, 153 P. 250, 253 (1915).

■ The rationale underlying the third element of equitable subrogation is readily apparent: one cannot claim subrogation for payments upon an obligation for which he is primarily responsible because "[t]here is no unjust enrichment in paying one's own debts." *See* Restatement (Third) of Prop.: Mortgages, § 7.6 cmt. c.

■ The fourth element precludes equitable subrogation where the party seeking subrogation fails to satisfy the entire obligation. *See Lawson v. Whitley,* 69 Colo. 346, 347, 194 P. 355, 355 (1921). Partial subrogation is not permitted because it "would have the effect of dividing the security between the original obligee and the subrogee, imposing unexpected burdens and potential complexities of division of the security and marshaling upon the original mortgagee." *Bank of New York v. Nally,* 820 N.E.2d 644, 652 (Ind.2005) (quoting Restatement (Third) of Prop.: Mortgages, § 7.6 cmt. a).

■ Finally, the fifth element prohibits equitable subrogation where application of the doctrine would be prejudicial to the intervening lienholder. For clarity, here, the intervening lienholder is Hicks. He is arguing that Chase and the Londres must fall into line behind his lien; Chase and the Londres are arguing that they are entitled to be first in line. For example, then, Hicks would be prejudiced if the new mortgage terms were more harmful to the intervening lienholder than those of the original obligation, if the new mortgage maturity date was significantly extended, or if there was an increase in the principal amount. *See Kim v. Lee,* 145 Wash.2d 79, 31 P.3d 665, 669–70 (2001) (refusing to subrogate new mortgagee where interest rate, principal, and maturity date of new mortgage were increased); *cf. Houston v. Bank of Am. Fed. Sav. Bank,* 119 Nev. 485, 78 P.3d 71, 75 (2003) (subrogating new mortgagee to principal amount of original loan, but not funds in excess of original loan). By contrast, an intervening lienholder suffers no prejudice merely by virtue of the fact that it is not elevated in priority. *See Western Federal,* 164 Colo. at 412, 436 P.2d at 123 (intervening lienholder not damaged or prejudiced in any way by being placed back in its original position); *see also Mort,* 86 F.3d at 895 (finding intervening lienholder's assertion of prejudice from lack of elevation in priority "wholly without merit"). Hicks has no right to be better off after the sale transaction than he was beforehand. An intervening lienholder is not prejudiced because it occupies the same position it held prior to satisfaction of the preexisting obligation. *See* Restatement (Third) of Prop.: Mortgages, § 7.6 cmt. a ("The holders of intervening interests can hardly complain about this result, for they are no worse off than before the senior obligation was discharged. If there were no subrogation, such junior interests would be promoted in priority, giving them an unwarranted and unjust windfall."); *Lamb Excavation, Inc.,* 95 P.3d at 546 (same).

■ We conclude that these five factors outline the circumstances in which equitable subrogation may apply in Colorado. We emphasize that they are, however, invoked only within the overall context of equity and the specific facts of each case. *See Wilshire Serv. Corp. v. Timber Ridge P'ship,* 743 N.E.2d 1173, 1178 (Ind.App.2001) ("Subrogation depends upon the equities and attending facts and circumstances of each case.") (internal quotation, citation omitted). Thus, even if these elements are satisfied, courts then look to whether the party seeking sub-

rogation acted with knowledge, negligence, or a degree of sophistication such that application of the doctrine would be inequitable.

With regard to knowledge, the majority of courts that have considered the issue hold that "actual knowledge [of an intervening lien] precludes the application of equitable subrogation, but constructive knowledge does not." *Bank of New York,* 820 N.E.2d at 652; *Houston,* 78 P.3d at 73. The rationale underlying this approach is that a mortgagee who pays a preexisting obligation without actual knowledge of an intervening encumbrance possesses the reasonable expectation of stepping into the shoes of the prior mortgagee. *See Lamb Excavation, Inc.,* 95 P.3d at 545. Critics of the majority view contend it fosters willful ignorance by encouraging prospective mortgagees to forgo conducting title searches so that they might later claim lack of actual knowledge. *See Houston,* 78 P.3d at 73.

Unlike the majority view, a minority of jurisdictions hold that either actual or constructive knowledge of an intervening lien bars equitable subrogation. *See Kuhn v. Nat'l Bank of Holton,* 74 Kan. 456, 87 P. 551, 552–53 (1906). This approach has been criticized as obviating the doctrine completely. *See Capitol Nat'l Bank,* 43 Colo. at 160, 95 P. at 316 (recognizing that because a debt must always be recorded in order to attach as a lien, constructive notice will always preclude equitable subrogation "except when . . . unnecessary and unimportant"); *see also Kim,* 31 P.3d at 675 (Sanders, J., dissenting) (if constructive knowledge were sufficient to defeat equitable subrogation, there would be no such doctrine since absent a prior filing or recording there would be no priority to contest); Restatement (Third) of Prop.: Mortgages § 7.6 cmt. a (preclusion of equitable subrogation based on actual or constructive knowledge permits a junior lienholder to be promoted in priority and receive an unwarranted and unjust windfall); *Houston,* 78 P.3d at 73 (same).

An alternative to the majority and minority views is offered by the Restatement (Third) of Prop.: Mortgages, section 7.6. The Restatement provides that equitable subrogation may be applied so long as the putative subrogee was promised repayment, reasonably expected to receive a security interest in the property with the priority of the discharged mortgage, and the intervening lienholder suffers no prejudice. Restatement (Third) of Prop.: Mortgages, § 7.6(a)(4). Thus, unlike the majority and minority views, the Restatement does not hinge application of the doctrine on the potential subrogee's knowledge of the intervening lien, but rather on the subrogee's expectations *and* the likelihood of prejudice to the intervening lienholder. *See Lamb Excavation, Inc.,* 95 P.3d at 545; *Kim,* 31 P.3d at 670.

Colorado law on this point is closer to the Restatement. As to the knowledge of the party asserting subrogation, constructive knowledge of an intervening lien is not, alone, sufficient to defeat the claim. If constructive knowledge were enough, the doctrine could not exist in the face of our Recording Act because mere recording, by statute, suffices to give constructive knowledge to the world of the existence of the lien. Equitable subrogation is an exception to the Recording Act. The statute and the doctrine are in direct conflict with one another. However, since the doctrine has existed in our case law for a century, and the legislature has not seen fit to abrogate it during that period of time, we must give credence to our precedent and apply the doctrine within its narrow confines.

Hence, our cases direct that the court must look at the potential subrogee's knowledge and possible negligence and also measure any prejudice that the intervening lienholder would suffer as a result of the subrogation. In *Capitol Nat'l Bank,* we concluded that subrogation was appropriate because the intervening lienholder was not prejudiced, the subrogee had no actual knowledge of the intervening lien, and the subrogee acted without negligence. 43 Colo. at 162, 95 P. at 317. In that case, we permitted equitable subrogation even in the face of a properly recorded lien, and looked to whether the subrogee was negligent in failing to obtain actual notice of the lien. *Id.* Indeed, our assessment of the subrogee's lack of negligence turned on the fact

that the recorded intervening lien "had by accident or otherwise been omitted from the [a]bstract of title of the ... premises." *Id.* at 157, 95 P. at 315.

Subsequently, in *Lawson,* we weighed prejudice to the intervening lienholder against the negligence of the subrogee and again concluded that subrogation was appropriate. 69 Colo. at 347–48, 194 P. at 355–56. In *Lawson,* we observed that the intervening lienholder had in no way altered its position in reliance on the released deed of trust. *Id.* at 348, 194 P. at 356. Additionally, the subrogee, who was the original holder of the first deed of trust, had not acted negligently in releasing her deed because she released it only after the title abstract failed to show the existence of the intervening lien. *Id.* Under these circumstances, we held that she was not guilty of any negligence. *Id.*

The circumstances present in *Lawson* were somewhat similar to those in *Holt v. Mitchell,* where we again considered the harm caused to the intervening lienholder, as well as the knowledge and negligence of the subrogee. 96 Colo. 412, 43 P.2d 388 (1935). In *Holt,* a mortgagee refinanced its original loan after the property had been encumbered. *Id.* at 414, 43 P.2d at 389. When the mortgagee released its first deed of trust in reliance on the county clerk and recorder's mistaken representation that no intervening lien existed, the intervening lienholder asserted priority and sought to foreclose. *Id.* Reasoning that the intervening lienholder had neither altered his position in reliance on the mortgagee's actions, nor would be harmed by subrogation, we concluded that subrogation was appropriate. *Id.* at 416–17, 388 P.2d at 390. Here again, as in *Capitol Nat'l Bank* and *Lawson,* we concluded that although the subrogee had record notice of the intervening lien, he was not negligent in failing to obtain actual notice of its existence because he did all that he could have done to discover it, but through no fault of his own did not. *See id.* at 416, 388 P.2d at 390.

In *Western Federal,* our main considerations were once again prejudice, knowledge, and negligence. 164 Colo. 407, 436 P.2d 121. In that case, a subrogee with actual knowledge of an intervening lien refinanced its

originally held mortgage, but failed to ensure that its loan retained priority. *Id.* at 411–12, 436 P.2d at 122–23. Despite the subrogee's actual knowledge of the intervening lien, we determined that the intervening lienholder would suffer no prejudice because it had neither done something that it would not have otherwise done, nor failed to do something that it otherwise would have done in reliance on the released deed of trust. *Id.* at 412, 436 P.2d at 123. Accordingly, we held subrogation was appropriate. *Id.* at 413, 436 P.2d at 124.

Hence, relating back to the five-factor analysis adopted by other courts, in Colorado, the preeminent consideration is the prejudice to the intervening lienholder. If the intervening lienholder is prejudiced, equitable subrogation cannot apply. If no prejudice would result, and the remaining four elements have been satisfied, our cases demonstrate that courts must then consider the putative subrogee's knowledge of the intervening lien, its negligence in failing to discover the intervening lien, and the subrogee's degree of sophistication. On the last point, courts have held that the equitable nature of the doctrine justifies holding sophisticated parties such as commercial lenders to a higher standard. *See Wilshire Serv. Corp.,* 743 N.E.2d at 1180 (citing *Osterman v. Baber,* 714 N.E.2d 735, 738–39 (Ind.App.1999)); *Houston,* 78 P.3d at 73 n. 10. Institutional lenders are routinely involved in such transactions and generally have significant experience and resources at their disposal. Under such circumstances, mistake and negligence are simply less excusable. *See Bankers Trust Co. v. United States,* 29 Kan.App.2d 215, 25 P.3d 877, 882 (2001).

We emphasize, however, that neither the instant case, nor our precedent should be misconstrued to permit equitable subrogation simply because a mortgagee fails to discover a previously recorded judgment lien. The right of subrogation is never granted as a reward for negligence. *Tibbetts v. Terrill,* 26 Colo.App. 64, 85, 140 P. 936, 944 (1914) (Cunningham, J., dissenting). Subrogation is not a matter of right, but is purely equitable in nature and will not be enforced when it would work an injustice to the rights

of those having equal equities. *United Sec. Ins. Co. v. Sciarrota,* 885 P.2d 273, 278 (Colo. App.1994).

### III. Application

In this case, the record indicates that the first four elements of equitable subrogation are satisfied. First, the Londres and Chase satisfied the Washington Mutual mortgage to protect their own interest. The Londres acquired title to the property and Chase is the holder of a promissory note secured by the deed of trust. Second, neither the Londres nor Chase acted as a volunteer, as "volunteer" has been defined by the majority of courts. Third, neither the Londres nor Chase was primarily liable for the original debt. Fourth, the Londres and Chase paid off the entire Washington Mutual mortgage. We turn then to knowledge and prejudice.

With regard to notice, there is no evidence that either the Londres or Chase had actual knowledge of the Hicks lien. Further, there is no evidence that they were negligent in failing to discover it; rather, they obtained a full title insurance commitment that purported to identify any encumbrances on the property, and the lien was not shown on that commitment. We reach this conclusion even recognizing that Chase is a sophisticated lender. Yet even for such a lender, reliance upon a title insurance company is not evidence of negligence.

Lastly, then, we turn to the question of whether Hicks would be prejudiced by allowing Chase and the Londres to step into priority positions in front of Hicks' lien. There is no evidence that the terms of the Chase loan are more detrimental to Hicks than the terms of the Washington Mutual mortgage; nothing indicates that the interest rate is higher, that the principal amount is greater, or that the maturity date is longer. Although it is reasonable to hypothesize a scenario in which Hicks could have been prejudiced by the intervening sale, there is no evidence in the record to support that hypothesis. Indeed, the record is devoid of any such evidence. Moreover, although Hicks now argues before this court that he was prejudiced because he was unable to negotiate a partial satisfaction of his lien at the closing on the sale of the property, nothing in the record supports this contention. Instead, facts in the record disclose that the Londres purchased the property for LESS than the cumulative amount of the three prior encumbrances, and that the holder of the second and third encumbrance received nothing at closing. Those facts suggest that had Hicks demanded a full or partial payment for release of his lien, Chase would have refused to finance the sale, Washington Mutual would have foreclosed, and Hicks would have received nothing. Instead, via equitable subrogation, the sale occurred, the Compass Bank liens were released, and Hicks was elevated from a fourth level to a third level priority, behind only that of Chase and the Londres— and for a lesser amount than the total of Washington Mutual's and Compass Bank's encumbrances. There is no showing of any real prejudice to Hicks as a result of equitable subrogation.

Hence, applying all factors to the particular factual circumstances of this case, we conclude that equity requires that the Londres and Chase be allowed to step into the first lien position formerly held by Washington Mutual.

### III. Conclusion

We hold the attendant facts and circumstances of this case weigh in favor of applying equitable subrogation. Accordingly, we affirm the court of appeals.