No. 21900.

Western Federal Savings and Loan Association of Denver, a United States corporation, for itself and as assignee *v.* Ben Gay, Inc., Helen Bush, Public Trustee of Jefferson County, and Jerry J. Berger.

(436 P.2d 121)

Decided December 26, 1967.    Rehearing denied February 5, 1968.

408

HIESTER, TANNER and CLANAHAN, BILL EARL TOM, ED-
WARD J. OSWALD, WINSTON HOWARD, for plaintiff in
error.

ALBERT W. GEBAUER, JOHN CORBRIDGE, for defendant in error Ben Gay, Inc.

*In Department.*

Opinion by MR. JUSTICE DAY.

WESTERN FEDERAL SAVINGS AND LOAN ASSOCIATION, hereinafter referred to as plaintiff. or Western Federal, brought this action in the district court for several alternative forms of relief but principally it prayed to have a deed of trust for the benefit of Ben Gay, Inc. (hereinafter referred to as defendant or Ben Gay) declared junior and inferior to the deed of trust held as security by Western Federal on a lot known and numbered as 7612 Vance Drive, Arvada, Colorado. The trial court entered judgment in favor of Ben Gay and denied Western Federal the relief sought.

Under a stipulation of facts were the following chronology of events:

In September 1961, Western Federal recorded a deed of trust on the property in question to secure a note in the amount of $11,000. The maker was Jerry Berger who obtained the loan for construction of a house on this particular lot. In October of 1961 Berger obtained a large construction loan in the amount of $50,000 from Ben Gay and as security therefore gave a deed of trust on not only the particular lot in litigation herein but on seven other lots with which we are not concerned. The priority of Western Federal's deed of trust as of September 1961 is not questioned.

In February 1963, Berger sought to. extend and to increase slightly Western Federal's original $11,000 loan to him. The principal amount of the original note remained the same but accrued interest, taxes, insurance and some other miscellaneous. items totaling $1000 was added so that Berger executed a new promissory note for $12,000 and at the same time executed a new deed

of trust on the lot in question. Upon recording the new deed of trust, Western Federal released its original deed of trust recorded in September 1961. With reference to the recorded encumbrances, Ben Gay's October 1961 deed of trust assumed a prior status.

Other facts which it is necessary to detail in order to have an understanding of the questions involved in this writ of error are not encompassed in the stipulated matters previously recited. The testimony offered by Western Federal was that when Berger sought to increase his original loan he represented to Western Federal that Ben Gay would subordinate its second deed of trust to the new deed of trust which would be necessary to be executed and recorded as security for the new loan. One of the officers of Western Federal testified that in reliance upon this representation it prepared a subordination agreement and delivered it to Ben Gay, but it was never executed by or returned by Ben Gay to Western Federal. One of the witnesses for Western Federal testified that one of the officers of Ben Gay confirmed over the telephone that Ben Gay was aware of the extended and increased loan and agreed orally to the subordination. This was denied by the Ben Gay official who was purported to have made this oral promise. Ben Gay contends that it actually learned of the release by Western Federal of its deed of trust about a month after the recording of the new deed of trust and the release of the old deed of trust. Thereupon some negotiations were conducted between the parties concerning their relative positions in respect to the liens then of record. However, in September 1964, Ben Gay instituted foreclosure proceedings on its claimed first deed of trust on the particular lot involved with Western Federal. The secured interests of Ben Gay in the other seven lots had been released so at the foreclosure sale in November 1964, Ben Gay bid $7704.03, the amount due on the balance of its notes plus the costs of its foreclosure.

In October 1964, prior to the foreclosure sale, Western Federal filed a motion to enjoin the issuance of the public trustee's deed to Ben Gay, or, in the alternative, to make the issuance of the public trustee's deed subject to final determination of the rights of the parties.

The trial court found that *Berger* did represent to Western Federal that Ben Gay had agreed to subordinate its second deed of trust to a new deed of trust if Western Federal would make a new loan; and additionally, it made findings that Western Federal relied on Berger's statement; and also, that it released its first deed of trust through a mistake of fact that the second deed of trust would be subordinated to the new deed of trust. The court *further* found, however, that Ben Gay "never made any such agreements, promises, or statements that it would subordinate, in fact."

In urging reversal of the trial court's judgment, Western Federal advances two arguments:

1. That the trial court's findings that there was no agreement or promise by Ben Gay to subordinate was error and contrary to the evidence, and

2. That on equitable principles Western Federal's first deed of trust released by them through mistake should be restored to its former first priority.

██ On the first point in the summary of argument, suffice it to say that the trial court's finding that there was no agreement to subordinate was made on conflicting evidence on this point, and we are bound by that determination. *Feit v. Zoller*, 155 Colo. 64, 392 P.2d 593.

█ We are persuaded, however, by the validity of Western Federal's second argument and hold that in equity Western Federal should be restored to its prior position. Ordinarily a release or cancellation of a deed of trust of record inures to the benefit of a junior lienor. However, where a first deed of trust has been released through a mistake of fact, equity, under certain cir-

cumstances, will intervene to correct the mistake. 59 C.J.S. *Mortgages* § 282.

█ We believe that the principles announced by this court in *Holt v. Mitchell,* 96 Colo. 412, 43 P.2d 388 control the determination of the present action. Although in *Holt, supra,* the one releasing the lien had no knowledge of the existence of another lien on the property and relied on a statement of the county clerk and recorder that a new deed of trust was a first and prior lien, the fact of lack of knowledge of the lien was not the basis of our holding therein. In *Holt, supra,* the question was whether the negligence in failing to determine the true state of the record precluded the one attempting to reinstate a lien to its prior superiority from obtaining the equitable relief sought. We held in *Holt, supra, inter alia,* that:

"* * * In the absence of a showing by defendants of a prejudicial change of position and damage to them, the matter of plaintiff's *negligence is not material.* In such case the question is merely whether the act was induced by mistake * *."

█ In the case at bar, although Western Federal released its lien without receiving the written agreement by Ben Gay to subordinate, and therefore did not exercise the care which the transaction seemed to indicate, nevertheless the court found (and the evidence supports the finding) that Western Federal did rely on the *mistaken belief* that Ben Gay would retain its second lien status. Ben Gay could have gained nothing by refusing to subordinate because in such event Western Federal would have merely refused to refinance the loan and retain its first lien. On the other hand, Ben Gay neither did something that it would not have done nor did it fail to do something that it should have done in reliance on the deed of trust. It was not damaged or prejudiced in any way; and if equity places Ben Gay back in its original position it is in no different position than it always has been. We further commented

in *Holt* that where correction of the mistake of fact is resisted, the burden is on the person resisting such correction to show that it has been damaged as a result of reliance on the release of a superior lien. Where no one is injured by the mistaken release, and the second lienholder has not changed his position in reliance on the fact that his lien has been advanced to first priority status, the mistake should not afford the junior lienor an unwarranted and unfair advantage to the detriment of the senior lien holder who made the mistake. The court should correct the mistake and return the parties to status quo even though the highest degree of vigilance was not used by the one releasing the superior lien.

The judgment of the trial court is reversed with instructions to reinstate Western Federal's original deed of trust as a first and prior lien to secure the original indebtedness of $11,000 plus the interest.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE McWILLIAMS and MR. JUSTICE PRINGLE concur.