Shirley S. JOONDEPH, Brian C. Joondeph, and CitiMortgage, Inc., Petitioners

v.

Donald P. HICKS, Respondent.

No. 08SC784.

Supreme Court of Colorado, En Banc.

June 28, 2010.

Hamil/Hecht LLC, J. Lawrence Hamil, Alicia M. Smith, Meredith A. Munro, Denver, Colorado, Attorneys for Petitioners.

Montgomery Little Soran & Murray, P.C., Frederick B. Skillern, Max S. Stich, Greenwood Village, Colorado, Attorneys for Respondent.

Burns, Figa & Will, P.C., Geoffrey P. Anderson, Genevieve M. Bernal, Denver, Colorado, Attorneys for Amicus Curiae The Real Estate Section of the Colorado Bar Association.

Justice EID delivered the Opinion of the Court.

 We granted certiorari to review the court of appeals' denial of equitable subrogation in a dispute over the priorities of various liens. *See Hicks v. Joondeph,* 205 P.3d 432, 433 (Colo.App.2008) (*"Joondeph"*). The respondent, Donald P. Hicks ("Hicks"), brought an action to determine his lien's priority and to foreclose the lien. The trial court granted summary judgment in favor of the petitioners, Shirley S. and Brian C. Joondeph ("the Joondephs") and CitiMortgage, Inc. ("CitiMortgage"), based on the doctrine of derivative equitable subrogation. Equitable subrogation is a doctrine under which a court may substitute a new lienholder into

the priority position of a former lienholder when the new lienholder meets certain prerequisites. Derivative equitable subrogation, as recognized by the trial court, would allow a person who had been equitably subrogated to then convey his or her senior priority to new lienholders through a warranty deed. The court of appeals reversed, finding no basis in our law for applying derivative equitable subrogation in the form requested by the petitioners. It also found that the petitioners did not themselves qualify for equitable subrogation.

We now affirm the court of appeals. We hold that, because the petitioners had actual knowledge of the Hicks lien and were not operating under the mistaken assumption that they would obtain a senior priority position, the doctrine of equitable subrogation is inapplicable. We also decline to recognize the doctrine of derivative equitable subrogation as inconsistent with the "narrow confines" of our equitable subrogation doctrine. *Hicks v. Londre*, 125 P.3d 452, 458 (Colo. 2005) ("*Hicks* ").

## I.

The dispute before us involves residential property located in Englewood, Colorado ("the Property"). In September 2001, Hicks obtained a judgment in the amount of $413,773.73 against Robert Grubbs ("Grubbs"). Hicks recorded his judgment in Arapahoe County in October 2001. By operation of section 13–52–102(1), C.R.S. (2000), Hicks' judgment attached to the Property, then owned by Grubbs. Three deeds of trust already encumbered the Property, putting Hicks in fourth priority position. First priority position was held by Washington Mutual Bank, NA ("WaMu").

In January 2002, Grubbs sold the Property to Kent and Jennifer Londré ("the Londrés") for $1,510,000. The Londrés provided part of the purchase price and obtained financing for the remainder from Chase Manhattan Mortgage Corporation ("Chase"). At the closing, the WaMu lien was paid in part and released, and the second and third priority liens encumbering the Property were released without payment. Despite a title search, the Londrés and Chase did not discover Hicks' lien, which was not released at closing.

In June 2002, Hicks brought an action to foreclose his lien. The Londrés and Chase countered by seeking to be equitably subrogated to the position that WaMu had held. In December 2005, this court held that, under the specific circumstances of their case, the Londrés and Chase would be permitted to step into the first priority position once held by WaMu. *See Hicks*, 125 P.3d at 454. The Hicks lien was thus left in junior position.

Three months before the *Hicks* opinion was released, in September 2005, the Londrés sold the Property to the Joondephs for $1,900,000. The Joondephs supplied part of the purchase price and obtained financing for the balance from Affiliated Financing Group, Inc., who subsequently assigned its note and deed of trust to CitiMortgage. The new loan had different terms, including a different loan amount and maturity date, than those of the WaMu loan. The Hicks lien was disclosed on multiple occasions, and the Joondephs' title insurance policy included an endorsement protecting against any loss caused by the enforcement of Hicks' judgment. The warranty deed from the Londrés explicitly excepted Hicks' judgment and enforcement action from its warranties of title.

Hicks filed the action underlying the present appeal in March 2006, seeking to obtain a declaratory judgment clarifying priority and to foreclose his lien. The petitioners counterclaimed to quiet title in the Property. In February 2007, the trial court granted summary judgment in favor of the petitioners. The trial court reasoned that, since the Londrés and Chase had obtained senior priority status through equitable subrogation, the petitioners were entitled to senior priority as well because the warranty deed conveyed all interests of the prior owners, including their subrogation rights. Thus, the trial court concluded, the petitioners should be derivatively subrogated to the senior priority position once held by WaMu, then by the Londrés and Chase.

The court of appeals reversed. *Joondeph*, 205 P.3d at 433. It reasoned that equitable

subrogation is a concept that assesses the equities between the parties before the court, and that therefore it is not something that can be asserted in a derivative fashion. *Id.* at 436. The court of appeals thus declined to recognize a doctrine of derivative equitable subrogation. *Id.* at 435–36.

We granted certiorari[1] and now affirm the court of appeals. First, we reaffirm our observation in *Hicks,* 125 P.3d at 458–60, that a lack of actual knowledge generally is a requirement for the application of equitable subrogation. Because the petitioners had actual knowledge of the Hicks lien, they cannot rely on equitable subrogation in this case. In addition, we decline to adopt a doctrine of derivative equitable subrogation.

## II.

■ Colorado's Recording Act sets out a "race-notice" system that protects buyers who record their liens without notice of prior unrecorded conveyances or liens. *See* § 38–35–109(1), C.R.S. (2009). Recording a lien in accordance with statutory requirements creates constructive notice, which under normal circumstances will leave subsequent liens in a priority position junior to a prior recorded lien. *See, e.g., Hicks,* 125 P.3d at 458. This race-notice system "is the linchpin of Colorado real estate law," and it creates certainty and predictability by "enabl[ing] a buyer or mortgagee, by analysis of the chain of title, to determine exactly what it is acquiring." *Premier Bank v. Bd. of County Comm'rs,* 214 P.3d 574, 579 (Colo.App.2009) (citations omitted).

■ Under the Recording Act, once a senior lien is released, "junior lienholders just move up the line in priority." *Hicks,* 125 P.3d at 456 (citation omitted). Under limited circumstances, however, the doctrine of equitable subrogation may create "a nar-row exception" to the general rule of priority established by the Recording Act. *Id.* at 454. Equitable subrogation allows "the substitution of another person in the place of a [lienholder], so that the person in whose favor it is exercised succeeds to the rights of the" lienholder. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.,* 90 P.3d 814, 833 (Colo.2004) (citation and quotation marks omitted). Subrogation operates by treating the new lien as "a revival and assignment of the discharged obligation and security, rather than [as] a substitution of a new obligation in place of another." *Land Title Ins. Corp. v. Ameriquest Mortgage Co.,* 207 P.3d 141, 145 (Colo.2009) (citations omitted). As an "assignee," a subrogee "stands in the shoes of" his subrogor and has all the rights of the former lienholder to whom he has been subrogated. *Farmers Acceptance Corp. v. DeLozier,* 178 Colo. 291, 294, 496 P.2d 1016, 1018 (1972); *Hicks,* 125 P.3d at 456 (noting that when certain factors are met, "equity will treat [the subrogee] as the assignee of the original encumbrance" (citation omitted)). In essence, equitable subrogation allows a party who would normally fall in line behind another lienholder to instead assume a predecessor's higher priority position.

■■ In *Hicks,* we set forth a comprehensive framework for determining whether equitable subrogation can be invoked to permit another party to step into the shoes of an original lienholder as subrogee. First, the following five prerequisites must be met:

(1) the subrogee made the payment to protect his or her own interest, (2) the subrogee did not act as a volunteer, (3) the subrogee was not primarily liable for the debt paid, (4) the subrogee paid off the entire encumbrance, and (5) subrogation would not work any injustice to the rights of the junior lienholder.

---

1. Specifically, we granted certiorari on the following three issues:

 1. Whether the court of appeals' refusal to apply the doctrine of derivative subrogation—the right of property owners to transfer equitable subrogation rights, by way of warranty deed, to subsequent purchasers—improperly deprives property owners of their equitable subrogation rights and unjustly results in the conveyance of a diminished estate.

2. Whether, if this court declines to follow the doctrine of derivative subrogation, this court should abandon the rule that a lender's actual knowledge of intervening liens prevents that lender's ability to enforce the obligation it satisfied under the doctrine of equitable subrogation.

3. Whether, if the court abandons this rule, petitioners may equitably subrogate to the senior lien position on the property.

125 P.3d at 456 (citation and quotation marks omitted). These factors must be "invoked only within the overall context of equity and the specific facts of each case." *Id.* at 457 (citation omitted). Thus, even when the five prerequisites are satisfied, we must "look to whether the party seeking subrogation acted with knowledge, negligence, or a degree of sophistication such that application of the doctrine would be inequitable." *Id.* at 457–58.

The petitioners here argue that equitable subrogation should apply to them even though they had actual knowledge of the Hicks lien. In the alternative, they argue that the concept of derivative equitable subrogation allows them to ascend to the priority position once held by the Londrés and Chase. We find both arguments unpersuasive.

### A.

It is undisputed that the petitioners here had actual knowledge of the Hicks lien. The question in this case is whether their actual knowledge precludes them from invoking the doctrine of equitable subrogation. We believe it does.

■ In *Hicks*, we made clear that, while actual knowledge is a factor to be considered in determining whether equitable subrogation applies, in most cases the presence of actual knowledge will defeat the application of equitable subrogation. *Id.* at 458–59 (discussing Colorado caselaw on the subject). That is because the roots of equitable subrogation lie in the concept of remedying a mistake. In *Hicks*, we observed that equitable subrogation is appropriate when "the deed of trust has been released due to mistake." *Id.* at 456 (citation omitted); *see also* 73 Am.Jur.2d *Subrogation* § 28 (2010) (equitable subrogation provides "relief against mistakes," when, for example, there has been an "inadvertent release of a security interest in land" (citations omitted)). If a party has actual knowledge of a lien, there is little chance that he or she harbors a mistaken expectation of priority lien status. *See, e.g., Lamb Excavation, Inc. v. Chase Manhattan Mortgage Corp.*, 208 Ariz. 478, 95 P.3d 542, 544 (Ariz.Ct.App.2004) (describing the ratio-

nale behind the actual knowledge requirement) (citations omitted). In *Hicks*, for example, the Londrés and Chase entered into the purchase transaction under the mistaken belief that there were no unaddressed liens on the Property. *See* 125 P.3d at 460 (noting that "there is no evidence that either the Londres or Chase had actual knowledge of the Hicks lien.").

■ In contrast to the situation in *Hicks*, the lien in this case was disclosed to the petitioners on multiple occasions. In fact, the Joondephs' title insurance policy included an endorsement protecting against any loss caused by Hicks' claim, and the warranty deed from the Londrés explicitly excepted Hicks' judgment and enforcement action from its warranties of title. Furthermore, at the time of sale the Property was subject to ongoing litigation in the *Hicks* case. Given the circumstances, the petitioners had no basis on which to form a reasonable belief that they were entitled to first priority.

When a party has actual knowledge of a lien, he or she has numerous means of addressing such lien, including settlement with junior lienholders or subordination agreements among the lienholders with competing priorities. *See, e.g., id.* at 455 (noting that parties arranged for two junior liens to be released upon sale); *Mount Emmons Mining Co. v. Town of Crested Butte*, 40 P.3d 1255, 1258 (Colo.2002) (noting that multiple lienholders may use subordination agreements to coordinate their respective priorities). Where parties could protect themselves from intervening liens through these other means, we find that reliance on equitable subrogation is misplaced. *See, e.g., United States v. Avila*, 88 F.3d 229, 238 (3d Cir.1996) (recognizing that the actual knowledge requirement "exists to encourage explicit subrogation agreements").

This is not to say that actual knowledge precludes equitable subrogation in every case. We have recognized that equitable subordination is appropriate where, despite having actual knowledge, "the payor was induced by some mistake of fact to satisfy the senior deed ... of trust." *Land Title Ins. Corp.*, 207 P.3d at 145 (citing *W. Fed. Sav. &*

*Loan Ass'n of Denver v. Ben Gay, Inc.*, 164 Colo. 407, 412, 436 P.2d 121, 123 (1967)). In *Western Federal,* the subrogee had actual knowledge of an intervening lien but acted on the mistaken belief that the lien would be subordinated through written documentation. 164 Colo. at 410–13, 436 P.2d at 122–24; *see also Hicks,* 125 P.3d at 459 (discussing *Western Federal* ). We held that it was proper for the trial court to "correct the mistake and return the parties to status quo." *Western Federal,* 164 Colo. at 413, 436 P.2d at 124. Here, by contrast, the petitioners were not operating under a mistaken belief that they would take priority position by virtue of some action taken by Hicks; in fact, they were fully aware of the Hicks lien and its priority position. Therefore, we find that equitable subrogation does not permit them to assume priority status.

## B.

The petitioners also ask us to extend *Hicks* and recognize the doctrine of derivative equitable subrogation. In effect, derivative equitable subrogation would allow a subrogee to convey his senior priority through a warranty deed to a buyer regardless of whether junior lienholders had released their lien, whether junior lienholders had contractually agreed to remain subordinate, or whether the buyer could itself meet the requirements for equitable subrogation. We decline to expand our doctrine of equitable subrogation in this fashion.[2]

No case in Colorado has recognized a doctrine of derivative equitable subrogation. Indeed, our recognition of the primary doctrine of equitable subrogation has been decidedly narrow in scope. In *Hicks,* for example, we emphasized that the doctrine was a "narrow exception" to the priorities set by the Recording Act, 125 P.3d at 454, and noted that, while "we must give credence to our precedent" in our recognition of the doctrine, we would apply it only "within its narrow confines," *id.* at 458. Expansion of the doctrine to include derivative claims—that is, to par-

ties who were not involved in the initial transaction but who claim the equitable position of parties who were involved—would run afoul of the narrow view of equitable subrogation we have taken in this state.

The petitioners maintain that we should adopt the position taken in *Avila,* 88 F.3d at 239, in which the Third Circuit interpreted New Jersey law as recognizing the doctrine of derivative equitable subrogation. We do not find *Avila* to be persuasive authority on this point.

Even though the *Avila* court recognized that New Jersey law, like Colorado law, provides that "actual knowledge" of the lien may preclude the application of equitable subrogation, it found that actual knowledge is entirely irrelevant for those seeking derivative equitable subrogation. *Id.* at 238. The court reasoned that the only relevant knowledge is that of the original subrogee, whose position the later purchaser seeks to assume. *Id.* In other words, the *Avila* court held that the application of derivative equitable subrogation was entirely controlled by the equities as between the original parties to the transaction, and, consequently, entirely divorced from the equities as they existed among the parties in the case before it.

Colorado law, however, rejects such an approach to equitable subrogation. In *Hicks,* for example, we stressed that any claim to equitable subrogation must be considered "within the overall context of equity and the specific facts of each case," 125 P.3d. at 457 (citation omitted), and that "[s]ubrogation is not a matter of right, but is purely equitable in nature," *id.* at 459 (citation omitted). In other words, in applying the doctrine of equitable subrogation, a court adjusts the priorities according to the equities as they exist among the parties before the court. *See id.* at 460 (considering the equities as they existed between Hicks, the Londrés, and Chase). A derivative equitable subrogation claim would be inconsistent with

---

2.  Hicks argues that even if the Londrés could pass an equitable subrogation right to the Joondephs through a warranty deed, they could not pass it along to the Joondephs' lender, CitiMortgage. The petitioners argue that their interests are inseparable. As we find no support in Colorado law for the derivative equitable subrogation doctrine sought in this case, we need not reach the issue of which party or parties might be entitled to it.

the fact that equitable subrogation is "purely equitable in nature." In sum, we decline to adopt the doctrine of derivative equitable subrogation.

## III.

We hold that, because the petitioners had actual knowledge of the Hicks lien and were not operating under the mistaken assumption that they would obtain a senior priority position, the doctrine of equitable subrogation is inapplicable. We also decline to recognize the doctrine of derivative equitable subrogation. We therefore affirm the court of appeals.