23CA1721 & 23CA1722 Egbune v Always Enterprises 05-29-2025

COLORADO COURT OF APPEALS

---

Court of Appeals Nos. 23CA1721 & 23CA1722
Douglas County District Court No. 17CV31060
Honorable Andrew C. Baum, Judge

---

Chuck Odifu Egbune,

Plaintiff-Appellant and Cross-Appellee,

and

Felicia A. Aniniba,

Defendant-Appellant,

v.

Always Enterprises, Inc., d/b/a A-1 Bail Bonds, and Richard Jordan,

Defendants-Appellees and Cross-Appellants,

and

Monique Robinson Hines; Iyona Walton; Kari Jones; Aaron Evans; Evans Case, LLP; and Benson & Case, LLP,

Third-Party Defendants-Appellees,

and

Breckenridge Property Fund 2016, LLC,

Third-Party Plaintiff-Appellee.

---

JUDGMENTS AFFIRMED

Division V
Opinion by JUDGE GROVE

Fox and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 29, 2025

_____

Chuck Odifu Egbune, Pro Se

Felicia A. Aniniba, Pro Se

Law Office of Larry A. Henning, Larry A. Henning, Denver, Colorado, for Defendants-Appellees and Cross-Appellants

McElroy, Deutsch, Mulvaney & Carpenter, LLP, June Baker Laird, Greenwood Village, Colorado, for Third-Party Defendants-Appellees

Coan, Payton & Payne, LLC, Matthew Chudacoff, Fort Collins, Colorado, for Third-Party Plaintiff-Appellee

¶ 1    Plaintiffs, Chuck Odifu Egbune and Felicia Aniniba, appeal the district court's judgments following two bench trials that resulted in the unwinding of the foreclosure of Egbune's home and the entry of money judgments in favor of third-party plaintiff, Breckenridge Property Fund 2016, LLC (Breckenridge); defendants, Always-Enterprises, Inc. (A-1), and Richard Jordan; and several other third-party creditors.[1]  A-1 cross-appeals the district court's judgment following the second bench trial that, among other things, awarded damages to Egbune based on the foreclosure's unwinding and also reordered the priority of the liens on Egbune's home.  We affirm.

I.    Lack of Compliance with the Colorado Appellate Rules

¶ 2    Breckenridge has requested that we dismiss Egbune's appeal based on his noncompliance with the Colorado Appellate Rules.  We decline to do so but note that our review of Egbune's and Aniniba's appeals, as well as A-1's cross-appeal, is encumbered by those parties' failure to comply with, among other things, C.A.R. 10 and C.A.R. 28.

---

[1] The third-party creditors are Evans Case, LLP; Iyona Walton; Monique Robinson Hines; Kari Jones; Aaron Evans; and Benson & Case, LLP.

## A. Egbune's and Aniniba's Appeals

¶ 3    Despite the fact that the appeals follow two separate bench trials, the record before us does not include transcripts of either proceeding.  It is an appellant's responsibility to "include in the record transcripts of all proceedings necessary for considering and deciding the issues on appeal."  C.A.R. 10(d)(3).  The failure to include transcripts is generally fatal because, in the absence of a complete record, we must presume that the missing portions of the record support the district court's findings and conclusions.  *In re Marriage of Dean*, 2017 COA 51, ¶ 13 ("Where the appellant fails to provide . . . a transcript, the [appellate] court must presume that the record supports the judgment."); *McCall v. Meyers*, 94 P.3d 1271, 1272 (Colo. App. 2004) ("A party cannot overcome a deficiency in the record by statements in the briefs.").

¶ 4    Nor is the lack of transcripts our only obstacle to substantive review of the appeals.  Among other things, the briefs filed by Egbune and Aniniba fail in large part to comply with C.A.R. 28. Egbune's opening brief, for example, lists twenty-three separate issues, and, although the argument section for each issue ostensibly addresses the standard of review and preservation as

2

required by C.A.R. 28(a)(7), many of the citations are inaccurate or incomplete, and several of the arguments are so poorly developed that we can do little more than guess at their substance. *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007) (appellate courts do not address undeveloped arguments). And while Aniniba's opening brief raises far fewer issues, it also repeatedly fails to identify whether particular issues were preserved and, if so, "the precise location in the record where the issue was raised and where the court ruled." C.A.R. 28(a)(7)(A). Simply listing page numbers corresponding to the beginning of motions and orders, which often span dozens of pages and address multiple overlapping issues, is insufficient to comply with this rule. *See Castillo v. Koppes-Conway*, 148 P.3d 289, 291 (Colo. App. 2006) ("Our Court will not search through briefs to discover what errors are relied on, and then search through the record for supporting evidence. It is the task of counsel to inform us, as required by our rules, both as to the specific errors relied on and the grounds and supporting facts and authorities therefor." (quoting *Mauldin v. Lowery*, 255 P.2d 976, 977 (Colo. 1953))).

## B. A-1's Cross-Appeal

¶ 5 Our primary obstacle to substantive review of A-1's cross-appeal is the lack of transcripts. A-1 seeks review of the trial court's judgment that followed the second of two bench trials, as well as the court's denial of A-1's C.R.C.P. 59 motion, filed after the court issued its judgment awarding damages against A-1 in favor of Egbune and against Egbune and Aniniba in favor of Breckenridge and exercised its equitable powers to grant Breckenridge priority position on its judgment lien against Egbune's property. Without a transcript of the bench trial, we cannot assess preservation and, in any event, must assume that the record supports the court's ruling. *See Dean*, ¶ 13.

## II. Factual and Procedural History

¶ 6 The relevant facts in this case stretch back to October 2009, when Egbune guaranteed an estimated $350,000 appearance bond for Velma Gilbert in a criminal case. Egbune and others signed a promissory note with A-1, a bail bonding company, to guarantee the $35,000 bail bond premium. The promissory note was secured by a deed of trust on Egbune's home in Highlands Ranch.

¶ 7     By January 2010, payments on the bail bond premium were in default. A-1 sent multiple letters seeking payment from Egbune and the other guarantors. Meanwhile, in 2011, Egbune filed for bankruptcy in Colorado. Procedural complications multiplied from there, but, as relevant to this appeal, the following events occurred over the next several years.

- An automatic stay, which is a usual occurrence in bankruptcy proceedings, was issued on the commencement or continuation of any judicial action involving claims against Egbune that arose before 2011. The stay terminated in October 2015.

- In November 2015, A-1 commenced foreclosure on Egbune's property. However, Egbune claimed the automatic stay from his bankruptcy proceedings remained in effect. This delayed the foreclosure process.

- In 2016, Egbune sued A-1 in bankruptcy court alleging claims that, if true, would prevent foreclosure on his home. The court dismissed these claims.

- In 2017, Egbune filed suit in Douglas County, alleging, among other claims, that fraud prevented A-1 from

foreclosing on his home. He also argued that A-1 did not provide him with proper notice and an opportunity to cure his debt, as required by Colorado statute. This appeal stems from Egbune's 2017 lawsuit.

- In 2018, the sale of Egbune's property as security for his debt to A-1 was authorized after a C.R.C.P. 120 hearing.

- In April 2018, a public trustee sold Egbune's home to Breckenridge for $195,000. A-1 received $165,216.46 from the sale, which reflected Egbune's outstanding debt, interest, and attorney fees.[2]

- Egbune refused to forfeit possession of the property, so Breckenridge filed a forcible entry and detainer action against him. The county court granted Breckenridge possession, finding that there did not appear to be any legal dispute about who owned the property. However, it agreed to stay its judgment for possession pending Euguene's appeal as long as Egbune posted a monthly bond equal to the property's fair market rental value.

---

[2] Egbune initially refused to accept the overbid amount of $29,483.54 but later claimed it in 2020.

- Breckenridge paid the property's mortgage payments, property taxes, and homeowners association fees.

- In October 2020, as part of the lawsuit underlying this appeal, the district court granted summary judgment on Egbune's claim that A-1 had not provided Egbune with the right to cure the debt he owed before it foreclosed on his home.

- The court then voided the foreclosure sale and granted Breckenridge's motion to intervene in the matter as a third-party plaintiff.

- After intervening and discovering a deed of trust recorded on July 23, 2021, which purported to transfer Egbune's property to Aniniba (Egbune's sister), Breckenridge joined Aniniba as a party. The deed, dated November 10, 2016, reflected a purchase price of $450,000.

- Breckenridge also joined other creditors related to Egbune's bankruptcy judgment as third-party defendants because Breckenridge's claim on the property would impact the priority of the creditors' liens.

7

¶ 8     Breckenridge then filed a third-party complaint in this lawsuit that requested that district court employ equitable remedies to restore it to the position it occupied before buying the property and, based on Egbune's purported sale of the property to Aniniba, alleged that Egbune and Aniniba had violated the Colorado Uniform Fraudulent Transfer Act (CUFTA).

¶ 9     As a result, in December 2022, the district court entered an order unwinding the sale of the property. It reinstated Egbune's "ownership" of the property (although Breckenridge maintained the "title as trustee of a constructive trust"), as well as his opportunity to cure the debt owed to A-1. The court ordered A-1 and Egbune to reimburse Breckenridge for the money received from the foreclosure sale and ordered Egbune to repay Breckenridge for its contributions toward the property's mortgage, property taxes, and homeowners association fees.[3]

¶ 10    In June 2023, the district court held a two-day bench trial on Breckenridge's CUFTA claim. In a detailed written order, the court found Aniniba's deed of trust was fraudulent, voided it, awarded

---

[3] The court found this figure amounted to $262,932.81 plus interest.

damages to Breckenridge as a penalty under CUFTA, and gave those penalty damages the same priority position as Breckenridge's award for the payments that it was owed based on the foreclosure's unwinding.

¶ 11     Finally, in August 2023, after another bench trial, the court ruled on the remaining claims in the case.  Based on A-1's failure to provide Egbune with the statutory notice to cure, it found A-1 liable for breach of contract and breach of the implied covenant of good faith and fair dealing and awarded damages to Egbune.

¶ 12     Now, Egbune and Aniniba, appealing separately, challenge the district court's orders and judgments in various ways, all of which essentially amount to claims that Breckenridge and A-1 do not own Egbune's property and assert that the amount the court ordered Egbune to pay Breckenridge, A-1, and other creditors is incorrect. A-1 cross-appeals, arguing that the district court erred when it found A-1 liable for breach of contract and breach of the implied covenant of good faith and fair dealing and when it exercised its equitable authority to reorder the priority date for the CUFTA judgment lien.

¶ 13    To the extent that we are able — based on the record before us — we address the parties' contentions below.

### III.    Aniniba's Appeal

¶ 14    We begin with Aniniba's brief, which challenges the district court's ruling on the CUFTA claim.  As best we can tell, Aniniba argues that (1) Breckenridge's CUFTA claims were time barred; (2) Breckenridge did not have standing to assert a fraudulent transfer because it was not a bona fide purchaser of the property; (3) the district court's finding that the transfer was fraudulent was unsupported by the evidence at trial; and (4) the court violated Aniniba's and Egbune's due process rights throughout the CUFTA proceedings.

¶ 15    The only one of these contentions that we are able to address on the merits is the first — that the statute of limitations barred Breckenridge from asserting claims under CUFTA.  Aniniba raised the issue in a pretrial motion to strike certain of Breckenridge's claims, and the district court rejected it (based on the undisputed facts) in a written order before the CUFTA trial.  Relying on the undisputed recordation date for the deed of trust that Aniniba acquired on Egbune's property, the court concluded that because

the deed of trust "was not filed and recorded until July 23, 2021, that was the date Breckenridge could have reasonably discovered the transfer." And because Breckenridge asserted its CUFTA claim within one year of that date, it satisfied the one-year statute of limitations in section 38-8-110(1)(a), C.R.S. 2024.

¶ 16    We agree with the court's ruling. Under Colorado's "race-notice" system of property recording, it is the act of "[r]ecording a lien in accordance with statutory requirements [that] creates constructive notice." *Joondeph v. Hicks*, 235 P.3d 303, 306 (Colo. 2010). Because Breckenridge did not have notice of the transaction in question, whether constructive or actual, until July 23, 2021, the purported transfer could not have been reasonably discovered before that date. The district court therefore correctly determined that Breckenridge's CUFTA claim was not time barred because it was filed within a year of the date that deed of trust was recorded.

¶ 17    Turning to Aniniba's remaining contentions, we conclude that we are unable to address them on the merits. In her briefing, Aniniba either provides nearly no record citations or, when she does cite something, refers to entire documents to support her various arguments and subarguments. *See Valentine v. Mountain States*

*Mut. Cas. Co.*, 252 P.3d 1182, 1186 (Colo. App. 2011) ("When a party does not point us to where an issue was raised and resolved, he 'place[s] the burden of searching records on us' — a search we are not required to undertake.") (citation omitted); *Castillo,* 148 P.3d at 291.

¶ 18     Furthermore, even if we were to conclude that Aniniba's briefing was otherwise adequate, the lack of a transcript of the CUFTA trial forecloses any substantive review.  The district court rejected Aniniba's "bona fide purchaser" argument based in part on a factual finding that, "[a]t the time the Aniniba Deed of Trust was recorded, Breckenridge had purchased the property in good faith at the foreclosure sale" two years earlier.  Aniniba's evidentiary challenge and due process argument likewise require an in-depth review of the trial proceedings themselves.  Without a transcript, that review is impossible, and we must assume that the court's findings of fact and conclusions of law are supported by the evidence.  *See Dean,* ¶ 13.

IV.    Egbune's Appeal

¶ 19     We take the same approach to the twenty-three claims raised in Egbune's opening brief: We address those that are preserved,

adequately developed and argued, and not dependent on omitted trial transcripts and decline to consider the others.

## A. Unpreserved Arguments

¶ 20 We decline to address several of Egbune's arguments because he fails to establish preservation as required by C.A.R. 28(a)(7)(A). Although each issue in Egbune's opening brief lists one or more pages of the court file under a "preservation" heading, many of the citations have no apparent connection to the issue being argued or merely reference complete motions or orders — some of which raise or resolve as many as a dozen or more issues — without specifying "the precise location in the record where the issue was raised and where the court ruled." *Id.*; *see Black v. Black*, 2018 COA 7, ¶ 67 ("'Judges are not like pigs, hunting for truffles buried in' the parties' submission.") (alteration and citation omitted); *O'Quinn v. Baca*, 250 P.3d 629, 631 (Colo. App. 2010) (explaining that the purpose of the relevant Rule 28 provision is to relieve courts from the burden of having to search records to determine whether — and, if so, how — issues had been raised and resolved below). For this reason alone, we do not reach the merits of the following contentions that the court erred when it

(1) "signed the Rule 120 order nunc pro tunc May 19, 2017 on March 14, 2018";

(2) "held that the [Uniform Commercial Code] does not apply to A-I [sic]";

(3) reversed a prior denial of summary judgment;

(4) directed the clerk to sign the deed vesting title to the property to Breckenridge; and

(5) granted Breckenridge lien priority on Egbune's property through subrogation.

## B.    Factual Arguments

¶ 21    Many of Egbune's appellate contentions depend on the district court's factual findings following one or both bench trials.  We decline to address the following arguments because, in the absence of any trial transcripts, we must assume that the record supports the district court's findings.  *See Dean,* ¶ 13.

(6) The district court erroneously found that the bond premium was not fully paid.

(7) A-1 should not have been awarded interest at a rate of 18% — the rate stipulated in the promissory note in the event of a default — instead, a 0% interest rate, which

14

was the regular rate set forth in the promissory note, should have been applied.

(8)     The district court erroneously found that Egbune owed "no less than $165,216.46 plus accrued interest" to A-1 and that "A-1's deed of Trust" was to be "secured by Egbune's property."

(9)     Egbune was entitled to a homestead exemption valuation of more than $75,000.

(10)    There was no record support for the district court's finding that the "yellow and pink [bail bond] Receipts Egbune signed were serial number 007630, and not a separate serial numbered receipt."

(11)    Egbune was entitled to greater damages than the $28,564.19 that the district court awarded.

(12)    The district court erroneously found that Egbune's transfer of his property to Aniniba was fraudulent under CUFTA.

(13)    The district court erroneously granted Breckenridge a constructive trust "because there is no evidence of fraud or duress by Egbune."

(14) The district court should have declined to grant equitable relief to Breckenridge and A-1 based on the doctrines of unclean hands and laches.

## C. Undeveloped Arguments

¶ 22    Several of Egbune's arguments are undeveloped, conclusory, unsupported by legal authority, or otherwise too disjointed to be reviewable. A party must inform the court as to both the specific errors asserted and the grounds, supporting facts, and authorities to support their contentions. *Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010). We will not consider a bald legal proposition presented without argument or development. *Id.* Because they are inadequately argued, we decline to address the following arguments.

(15) The district court erred when it found the "bond statute" and its associated rules and regulations inapplicable to the transaction between Egbune and A-1.[4]

(16) This court should "add Jordan to the judgment" because, "[u]nder the Motion for Partial Summary Judgment filed on April 14, 2020, Mr. Jordan is a party to the lawsuit."

(17) "The trial court erred when it denied Egbune's motion for summary judgment based on fraud."[5]

---

[4] Egbune does not identify the "bond statute" in question; instead, he only generally cites (1) section 10-2-101, C.R.S. 2024 (the Colorado Producer Licensing Model Act); (2) section 12-7-101, C.R.S. 2009 (repealed 2012), which was in effect when the note was executed and provided definitions for the professional occupations code for bail bonding agents but was subsequently repealed and relocated, *see* Ch. 280, sec. 41, § 12-7-101, 2012 Colo. Sess. Laws 1509-10; (3) section 12-7-108(3), C.R.S. 2009 (repealed 2012), which has likewise been repealed, *see* Sec. 40, 2012 Colo. Sess. Laws at 1509; and (4) a 2009 administrative regulation that set out filing and reporting requirements for cash bail bondsmen. Beyond offering an undeveloped assertion that A-1 "knowingly violated this authority," Egbune fails to present any argument as to why these provisions apply to A-1 or how A-1 violated them.

[5] In addition, "the propriety of a summary judgment denial is not appealable after a trial on the merits regardless of whether the denial is premised on a point of law or material issues of fact in controversy." *Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1250 (Colo. 1996).

## D.    Remaining Claims

¶ 23    We address Egbune's remaining contentions on the merits to the extent that we are able to do so.

### 1.    Unwinding

¶ 24    Egbune argues the district court mistakenly applied section 38-38-109(2)(d), C.R.S. 2024, to unwind the foreclosure on Egbune's home.  While his deficient record citations and jumbled argument hamper our review, we are able to discern that Egbune believes the court erred by "unwinding" the foreclosure sale because that sale was "void ab initio" and that the court's unwinding remedy therefore exceeded its statutory authority.

¶ 25    As Breckenridge points out, however, the district court's unwinding order was an equitable remedy, not a statutory one, and was modeled after the "procedures and deadlines in [section] 38-38-109(2)(d)" because, under the circumstances, those provisions "provide[d] the best and most equitable way to resolve the voidance of the foreclosure."  Consistent with the relief that Breckenridge sought in its complaint — that all parties to the sale should be returned to their preforeclosure positions — we cannot conclude

that the court's well-reasoned decision to grant that relief was an abuse of discretion.

### 2. Statute of Limitations

¶ 26 Egbune argues that the statute of limitations "ran on A-1's claim on the note," apparently because the foreclosure was not completed within six years of Egbune's last payment. We disagree. As the district court found, A-1 filed its counterclaim against Egbune within six years of Egbune's last payment. A-1's counterclaim is thus not barred by the statute of limitations in section 13-80-103.5(1)(a), C.R.S. 2024. *See Hickerson v. Vessels*, 2014 CO 2, ¶ 19 ("[When] a debtor voluntarily makes a payment, the payment constitutes a promise to pay the remaining debt and operates to restart the statute of limitations period.").

### 3. Attorney Fees

¶ 27 Egbune contends that the district court should have awarded him attorney fees. We disagree.

¶ 28 In its June 21, 2023, order, issued after the first bench trial, the district court found that Egbune was "the prevailing party and is entitled to attorney fees" against A-1 based on A-1's failure to provide Egbune with an opportunity to cure. A-1 later filed a

C.R.C.P. 59 motion pointing out that neither the note nor the deed of trust contained a fee-shifting provision that entitled Egbune to an award of fees in the event that he prevailed.

¶ 29    The court agreed, explaining that it had mistakenly cited C.R.C.P. 54(d), which is limited to costs, and that in the absence of a fee-shifting provision in the underlying contract, the only way that it could award fees to Egbune would be under section 13-17-102, C.R.S. 2024.  The court found that a fees award under that provision would be inappropriate because A-1's claims did not lack substantial justification.  The court therefore vacated its award of attorney fees but confirmed that Egbune was entitled to costs under C.R.C.P. 54(d).

¶ 30    Egbune then filed his own C.R.C.P. 59 motion, pointing out the fee-shifting provision in the deed of trust.  Although that provision only worked in favor of the foreclosing party, he argued that the deed of trust should be reformed to permit an award of fees to him as well.

¶ 31    The court correctly denied Egbune's motion on the ground that he had never presented this argument, or any evidence supporting this argument, at trial.  As the court explained, C.R.C.P.

20

59 may not be used to raise new issues that were not presented at trial. *See Flagstaff Enters. Constr., Inc. v. Snow*, 908 P.2d 1183, 1185 (Colo. App. 1995); *see also In re Marriage of Lohman*, 2015 COA 134, ¶ 22.

### 4. Intervention

¶ 32    Egbune next claims the court improperly allowed Breckenridge to intervene in the case. We disagree. As the purchaser at the foreclosure sale, Breckenridge had an interest in the subject matter of the action that would be impaired if it was required to pursue disgorgement of the proceeds of that sale in a separate action, and A-1 could not adequately represent Breckenridge's interest as the litigation moved forward. Accordingly, intervention under C.R.C.P. 24(a)(2) was appropriate.[6]

### 5. Motion to Amend

¶ 33    Egbune contends the court erred when it denied his motion to amend his complaint a second time.[7] A court has discretion

---

[6] To the extent that Egbune asserts that Breckenridge's intervention was untimely, that argument is conclusory, and we decline to consider it further. *See Barnett v. Elite Props. of Am., Inc.*, 252 P.3d 14, 19 (Colo. App. 2010).

[7] Egbune also claims the district court denied his first motion to amend, but the record shows it was granted.

21

whether to grant a party leave to amend the complaint a second time. *See Riccatone v. Colo. Choice Health Plans*, 2013 COA 133, ¶¶ 47-48. The district court did not abuse that discretion here because, as it explained, Egbune's motion was made in bad faith and was futile. Pointing to Egbune's various other cases involving A-1, Breckenridge, and other creditors, the court explained that the timing of Egbune's second motion to amend, in combination with other motions pending before the district court, had the effect of "buy[ing] him more time" regarding the sale and transfer of his property. Additionally, it found Egbune's motion "lacked sufficient legal and factual basis" because it restated the same facts as the original complaint in different terms. We see no reason to disturb the district court's finding on this issue.

## V. A-1's Cross-Appeal

¶ 34 In its cross-appeal, A-1 challenges several of the district court's rulings following the bench trial on Egbune's claims for breach of contract and the implied duty of good faith and fair dealing. As we noted above, however, A-1 failed to include a transcript of the bench trial in the record on appeal. *See* C.A.R. 10(d)(3) ("The appellant must include in the record transcripts of all

proceedings necessary for considering and deciding the issues on appeal."); *see also* C.A.R. 10(a)-(b) (on appeal, the appellant must provide a complete record on the issue); *Wolven v. Velez*, 2024 COA 8, ¶ 53 n.6 (the party asserting an error has an obligation to present a record that discloses the asserted error).

¶ 35 All of A-1's arguments — including those raised in its C.R.C.P. 59 motion challenging the priority date for Breckenridge's CUFTA lien — depend to some extent on the evidence presented at trial. Just as importantly, without a trial transcript we are unable to determine whether the arguments that A-1 raises on appeal were preserved by objection or argument in the district court. Therefore, we are unable to address A-1's claims on the merits.

## VI. Attorney Fees

¶ 36 Aniniba, Egbune, and A-1 all request an award of appellate attorney fees. However, none of them explain why they are entitled to a fees award. *See In re Marriage of Wright*, 2020 COA 11, ¶ 39 (denying a request for appellate attorney fees "because [the party] failed to cite any legal authority for the request"); C.A.R. 39.1 ("If attorney fees are recoverable for the appeal, the principal brief of the party claiming attorney fees must include a specific request . . .

and must explain the legal and factual basis for an award of attorney fees.").  In any event, given the disposition of this appeal, we conclude that a fees award would be inappropriate.

## VII.  Disposition

¶ 37    We affirm the judgments.

JUDGE FOX and JUDGE JOHNSON concur.